612 A.2d 566

**Gerald E. SURMACZ, Ph. D., Petitioner,**

**v.**

**DEPARTMENT OF PUBLIC WELFARE, Respondent.**

Commonwealth Court of Pennsylvania.

Argued May 11, 1992.

Decided June 23, 1992.

Timothy R. Bevevino, for petitioner.

Thomas F. Halloran, Sr. Deputy Atty. Gen., for respondent.

Before COLINS and PELLEGRINI, JJ., and BARRY, Senior Judge.

COLINS, Judge.

Presently before this Court is the preliminary objection of respondent, Department of Public Welfare (DPW). DPW alleges that the first amended complaint of Gerald E. Surmacz (petitioner) fails to state a claim upon which relief can be granted pursuant to the Whistleblower Law (Law), Act of December 12, 1986, P.L. 1559, 43 P.S. §§ 1421–1428.

Petitioner's first amended complaint alleges that DPW violated the Law by terminating him from his position as a resident in psychology at Warren State Hospital (Hospital) after he made a good faith report of wrongdoing to the State Board of Nursing.[1] Petitioner alleges that he prepared a

1. Section 3(a) of the Law states that "[n]o employer may discharge, threaten or otherwise discriminate or retaliate against an employee ... because the employee ... makes a good faith report ... to the employer or appropriate authority [regarding] an instance of wrongdoing or waste." 43 P.S. § 1423(a). Section 2 of the Law defines wrongdoing as, in pertinent part, "[a] violation ... of a code of conduct or ethics designed to protect the interest of the public or the employer."

memorandum dated July 11, 1989, which he addressed to the Hospital's superintendent and which reported that a particular nurse on a particular ward failed to follow proper procedure. According to petitioner, it was the unwritten policy of the ward's treatment team to notify the psychologist assigned to the ward of any attempted suicide. This particular nurse, according to petitioner, did not report suicide attempts. Petitioner alleges that he delivered the memorandum to the nurse in question and then to the superintendent. Thereafter, he was suspended from his employment for three days. Additionally, he alleges that he was warned that if he persisted with complaints of wrongdoing by the nursing staff, he would be terminated from his employment. When the Hospital took no action pursuant to his memorandum, petitioner alleges that he sent a letter and a copy of the memorandum to the State Board of Nursing. The State Board of Nursing contacted the Hospital, and, thereafter, petitioner was first suspended for thirty days and then terminated from his employment.

DPW filed a similar preliminary objection to petitioner's original complaint. That preliminary objection was sustained in our opinion filed November 1, 1991, which stated that although petitioner "contends that his report cited instances of 'wrongdoings' by the nursing staff which violated the Hospital's standing orders and procedures, his complaint fail[ed] to attach those procedures, and we are unable to determine whether they are within the definition of code of conduct as set forth under the Whistleblower Law." *Surmacz v. Department of Public Welfare* (No. 16 M.D.1991, filed November 1, 1991), slip op. at 3. Petitioner was given leave to amend his complaint to include the standing orders and procedures which he contended amounted to a code of conduct.

No code of conduct is attached to petitioner's first amended complaint. Rather, petitioner again alleges that a particular nurse failed "to follow standing orders and procedures." He alleges that the treatment team for each ward formulates team policy which is to be followed by each individual working on that particular ward. He further alleges that "certain

discovery material" confirms that the policy at issue in this matter was "an unwritten team policy."

> Preliminary objections in the nature of a demurrer admit all well-pleaded facts in the pleading attacked as well as all reasonable inferences deducible therefrom and cannot be sustained unless it is clear on the face of the pleading that the law will not permit the recovery sought, resolving all doubts in favor of overruling the demurrer.

*Township of South Fayette v. Bloom,* 73 Pa.Commonwealth Ct. 495, 506 n.7, 459 A.2d 41, 46 n.7 (1983).

DPW argues that petitioner's first amended complaint contains no allegation of wrongdoing as defined in the Law, because it contains no allegation of a violation of a code of conduct designed to protect the interests of the public or the Hospital. We agree. Although "code of conduct" is not defined by the Law, Section 1903(a) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1903(a), provides that "[w]ords and phrases shall be construed according to rules of grammar and according to their common and approved usage...." We have no doubt that "code," as it is commonly defined, connotes a written document. Our non-legal dictionary defines code as

> any of various systems or collections of principles, rules, or regulations that do not constitute a legal code as **a:** any set of traditional rules of conduct that are considered morally binding upon the individual as a member of a particular group ... [or] **b:** a set of rules for or standards of professional practices or behavior set up by an organized group ... and usu. reinforced by certain police and punitive powers of the group against nonconforming members....

Webster's Third New International Dictionary 437 (1966). Our legal dictionary defines code as "[a] systematic collection, compendium or revision of laws, rules, or regulations." Black's Law Dictionary 233 (5th ed. 1979).

Petitioner alleged that the wrongdoing he reported involved a violation of an unwritten treatment team policy. Having determined that the Law's reference to a code of conduct means a written document, we must sustain DPW's preliminary objection, because it is clear on the face of petitioner's

first amended complaint that the Law will not permit the recovery he seeks.

Accordingly, the preliminary objection of the Department of Public Welfare is sustained, and the petition for review is dismissed.

## ORDER

AND NOW, this 23rd day of June, 1992, the preliminary objection of the Department of Public Welfare is sustained, and the petition for review is dismissed.