720 A.2d 757

John P. GOLASCHEVSKY, Appellant,

v.

COMMONWEALTH of Pennsylvania, DEPARTMENT OF ENVIRONMENTAL PROTECTION, Appellee.

Supreme Court of Pennsylvania.

Argued Oct. 22, 1997.

Decided Nov. 24, 1998.

158

---

Patrick M. McHugh, Philadelphia, for John P. Golaschevsky.

Patrick H. Blair, Beth Liss Shuman, Harrisburg, for D.E.P.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO and NEWMAN, JJ.

*OPINION OF THE COURT*

NEWMAN, Justice.

John P. Golaschevsky (Appellant) appeals from an Order of the Commonwealth Court granting a Motion for Summary Judgment filed by the Commonwealth of Pennsylvania, Department of Environmental Resources (DER) in Appellant's original action against DER pursuant to the Pennsylvania Whistleblower Law, Act of 1986, P.L. 1559, No. 169, *as amended*, 43 P.S. § 1421 *et seq.* (Whistleblower Law). We granted allocatur to decide whether alleged copyright violations by DER employees constitute "wrongdoing" within the meaning of the Whistleblower Law, and whether Appellant has adequately established a causal connection between his report of such conduct and DER's termination of his employment.

### FACTUAL AND PROCEDURAL BACKGROUND

Appellant began his employment with DER on September 7, 1993 as a probationary employee. He was classified as a Computer Systems Analyst I and assigned to work in DER's District Mining Operations (DMO) office in Harrisburg. Pursuant to a Job Description dated November 1, 1993, which Appellant signed, his duties included: assisting in the development of computer program applications; ensuring adherence to departmental standards for hardware, software, development, security and operations; conducting initial problem diagnoses and coordinating with vendors for hardware repairs; attending Systems Coordinator meetings; performing various training functions; and designing and installing LAN's (local area networks).

On December 20, 1993, Appellant met with his supervisor Paul Linnan (Linnan), DER's Director of District Mining Operations, and informed Linnan that he suspected other DMO employees were using certain computer software in violation of federal copyright laws. Linnan encouraged Appel-

lant to make a detailed report regarding the alleged copyright violations.

Approximately three weeks later, on January 7, 1994, Appellant met with Linnan and Lynda Ronemus (Ronemus), another supervisor, to receive an interim performance evaluation. The evaluation report noted that Appellant's performance was lacking in a number of ways, including failure to achieve established goals. Linnan and Ronemus discussed Appellant's performance problems with him, particularly his failure to complete certain assignments. The following week, Appellant's supervisors gave him a list of projects to complete during the first quarter of the year. With the assistance of Appellant's union representative, Appellant and his supervisors established and agreed to a schedule for completion of the assigned work.

On April 15, 1994, Linnan and Ronemus gave Appellant a second performance evaluation. Appellant's overall performance was rated "unsatisfactory", and the report noted performance problems virtually identical to those noted in the first evaluation report, e.g., failure to complete assignments on time. By letter dated April 25, 1994, DER terminated Appellant's employment, effective April 26, 1994, for failure to meet the minimum performance standards for his position.

Following his termination, Appellant filed a Complaint against DER in the Commonwealth Court,[1] alleging that he was terminated in violation of the Whistleblower Law. Specifically, Appellant claimed that he was the victim of an improper retaliatory termination because of his reporting alleged copyright violations by DER employees.

After the parties took discovery, DER filed a Motion for Summary Judgment, arguing that Appellant had failed to state a cause of action pursuant to the Whistleblower Law. The Commonwealth Court agreed and granted summary judgment in favor of DER. Appellant now appeals to this Court, arguing that the Commonwealth Court erred in holding that

1. Pursuant to Section 4 of the Whistleblower Law, 43 P.S. § 1424(a), a civil action alleging a violation of the Whistleblower Law may be brought in any court of competent jurisdiction.

he failed to establish a prima facie case of retaliatory discharge pursuant to the Whistleblower Law.

## DISCUSSION

This appeal involves two separate issues. The first is whether the conduct that Appellant reported to his supervisors—alleged violations of federal copyright laws—comes within the Whistleblower Law's definition of "wrongdoing". The second is whether Appellant established the requisite causal connection between his report of copyright violations and the subsequent termination of his employment. We discuss each in turn.

### Issue One: Definition of "Wrongdoing"

Section 3 of the Whistleblower Law, 43 P.S. § 1423(a), provides as follows:

(a) Persons not to be discharged—No employer may discharge, threaten or otherwise discriminate or retaliate against an employee regarding the employee's compensation, terms, conditions, location or privileges of employment because the employee or a person acting on behalf of the employee makes a good faith report or is about to report, verbally or in writing, to the employer or appropriate authority an instance of wrongdoing or waste.

Pursuant to the definitional section of the Whistleblower Law, 43 P.S. § 1422, the statute applies to "public bodies", including Commonwealth agencies like DER.

43 P.S. § 1422 also defines "wrongdoing" as:

A violation which is not of a merely technical or minimal nature of a Federal or State statute or regulation, of a political subdivision ordinance or regulation or of a code of conduct or ethics designed to protect the interest of the public or the employer.

This definition was at issue in *Gray v. Hafer*, 168 Pa.Cmwlth. 613, 651 A.2d 221 (Pa.Cmwlth.1994), *affirmed per curiam*, 542 Pa. 607, 669 A.2d 335 (1995), in which an employee of the Department of the Auditor General reported to his superiors

instances of allegedly improper conduct perpetrated by employees of another governmental unit. In that context, the Commonwealth Court interpreted the statutory definition of "wrongdoing" as follows:

"In determining whether "wrongdoing" is established by reporting violations not only of crimes of the employer but of third parties, we must look to the definition of "wrongdoing." Within the definition of "wrongdoing", there is a requirement that the violation of the law or regulation be one that is designed to protect the interest of the public or employer. While the definition uses the phrase "to protect the interest of the public", and that could be interpreted to apply to any statute or ordinance as used in the context of retaliation taken by an employer because of an employee's work performance, that requirement means that a statute or regulation is of the type that the employer is charged to enforce for the good of the public or is one dealing with the internal administration of the governmental employer in question."

*Gray*, 651 A.2d at 224. In so limiting the definition of "wrongdoing", *Gray* was principally concerned with preventing employees from invoking the Whistleblower Law in cases where there could be no rational relation between the alleged illegal activity and the employer's conduct.

■ However, *Gray* 's limitation of the definition of "wrongdoing" plainly does not apply where, as here, the employee alleges that there has been illegal activity within his own agency. Under these circumstances, pursuant to the plain language of 43 P.S. § 1422, "wrongdoing" includes not only violations of statutes or regulations that are "of the type that the employer is charged to enforce," but violations of any federal or state statute or regulation, other than violations that are "of a merely technical or minimal nature." [2] Although here there is some question whether the alleged copyright

2. For example, had Appellant reported to his supervisors that fellow employees were dealing drugs out of the office, such conduct would constitute "wrongdoing", regardless of the fact that DER is not charged with enforcing the drug laws.

violations Appellant reported to his supervisors would come within the "technical or minimal" exception, we need not reach that issue, because Appellant clearly has not met his burden of demonstrating a causal connection between his report and the subsequent termination of his employment.

## Issue Two:  Causal Connection

While *Gray*'s analysis of the definition of "wrongdoing" is inapplicable to the present case, its discussion of the causal connection issue is germane.  *Gray* correctly held that, to make out a prima facie case of retaliatory termination pursuant to the Whistleblower Law, a plaintiff must "show by concrete facts or surrounding circumstances that the report [of wrongdoing or waste] led to [the plaintiff's] dismissal, such as that there was specific direction or information received not to file the report or [that] there would be adverse consequences because the report was filed." *Gray*, 651 A.2d at 225.

■  Here, Appellant does not present sufficient evidence to establish a causal connection between his report and his termination.  He does not allege that his supervisors threatened to fire him or to impose any other adverse consequences because of his report, nor does he establish any other "concrete facts" to connect the report with the dismissal.  Instead, in attempting to show a causal connection, Appellant relies solely on vague and inconclusive circumstantial evidence.

For example, Appellant alleges that, prior to his December 20, 1993 meeting with Linnan regarding the alleged copyright violations, his supervisors had not indicated any dissatisfaction with his work.  Appellant claims that his report of alleged wrongdoing touched off a series of retaliatory actions, including negative performance evaluations, lack of cooperation from fellow employees and supervisors, withholding of information regarding computer software, and, ultimately, termination of Appellant's employment.  However, this "evidence" constitutes nothing more than Appellant's perception of how others treated him after he made the December 20, 1993 report—a

perception that is obviously colored by Appellant's interest in proving that he is a victim of retaliatory discharge.

Viewing the evidence objectively, Appellant's termination apparently was the result of his unsatisfactory work performance, and had nothing to do with his report of alleged copyright violations. Indeed, rather than punishing him for making an oral report of alleged wrongdoing, Appellant's supervisors encouraged him to follow up on the matter and produce a written report, though he apparently never did so.

Appellant offers no concrete evidence tending to show a causal connection between his report of alleged copyright violations and his subsequent termination, and, therefore, he cannot establish a prima facie case of retaliatory discharge pursuant to the Whistleblower Law. Accordingly, we AFFIRM the Commonwealth Court's grant of summary judgment in favor of DER.

NIGRO, J., files a concurring opinion.

ZAPPALA, J., concurs in the result.

NIGRO, Justice, concurring.

I concur in the result reached by the majority. I agree that Appellant produced insufficient evidence of retaliation to survive summary judgment in his action under the Whistleblower Law. However, I write separately to clarify that absent direct evidence of retaliation, circumstantial evidence may be used to prove a violation of the statute.

While there is little authority addressing the burdens of proof under the Whistleblower Law, 43 Pa.C.S. §§ 1421–1428, the Commonwealth Court has stated that the statute envisions a shifting burden of proof. *Watson v. City of Philadelphia*, 162 Pa. Commw. 340, 347, 638 A.2d 489, 492 (1994). An employee is obligated to show that he reported wrongdoing before being subjected to adverse action. *Watson*, 162 Pa. Commw. at 347, 638 A.2d at 492. *See also* 43 Pa.C.S. § 1424(b).[1] The burden then shifts to the employer to estab-

1. Section 1424(b) states:

lish that there was a legitimate reason for the adverse action. *Watson*, 162 Pa. Commw. at 347, 638 A.2d at 492. *See also* 43 Pa.C.S. § 1424(c).[2] Once the employer offers such evidence, the burden shifts back to the employee to show that this reason was merely pretextual. *Watson*, 162 Pa. Commw. at 347, 638 A.2d at 492. The burden shifting under the Whistleblower Law is similar to that found in cases involving claims of unlawful discrimination brought under the Pennsylvania Human Relations Act, 43 P.S. §§ 951–963 (PHRA). *Id. See also Allegheny Housing Rehabilitation Corp. v. Pennsylvania Human Relations Comm'n*, 516 Pa. 124, 532 A.2d 315 (1987)(discussing shifting burdens of proof under the PHRA for discrimination claims).[3]

The Whistleblower Law does not explicitly require an employee to establish a causal connection between his report of wrongdoing and the alleged reprisal as part of his prima facie case. *See* 43 Pa.C.S. § 1424(b)(stating that an employee must show that before the alleged reprisal, he reported or was about to report wrongdoing). The Commonwealth Court has stated, however, that to make out a cause of action under the Whistleblower Law, an employee must make more than a general statement that a report was filed and he was subsequently fired. As recognized by the majority, in *Gray v. Hafer*, 168 Pa. Commw. 613, 620, 651 A.2d 221, 225 (1994), the Commonwealth Court stated that an employee must show that

Necessary showing of evidence.—An employee alleging a violation of this act must show by a preponderance of the evidence that, prior to the alleged reprisal, the employee or a person acting on behalf of the employee had reported or was about to report in good faith, verbally or in writing, an instance of wrongdoing or waste to the employer or an appropriate remedy.

2. Section 1424(c) states:

Defense.—It shall be a defense to an action under this section if the defendant proves by a preponderance of the evidence that the action by the employer occurred for separate and legitimate reasons, which are not merely pretextual.

3. In *Allegheny*, 516 Pa. at 129–31, 532 A.2d at 318–19, the Court applied a burden shifting analysis similar to that employed in Title VII discrimination cases.

the report led to his dismissal.[4]  *See also Robert Wholey Co., Inc. v. Pennsylvania Human Relations Comm'n,* 146 Pa. Commw. 702, 706, 606 A.2d 982, 983 (1992)(prima facie case of retaliation under the PHRA requires showing of a causal connection); *Krouse v. American Sterilizer Co.,* 126 F.3d 494, 500 (3rd Cir.1997)(prima facie case of retaliation under Title VII requires showing of a causal connection).

Appellant correctly states that establishing a prima facie case in this context is not intended to be onerous.  *See Allegheny Housing Rehabilitation Corp. v. Pennsylvania Human Relations Comm'n,* 516 Pa. at 130, 532 A.2d at 319.  To establish a causal connection, an employee must show by concrete facts or surrounding circumstances that the report led to his dismissal.  *Gray,* 168 Pa. Commw. at 620, 651 A.2d at 225.  The court's examples of such facts or circumstances in *Gray* were evidence of a specific direction not to file the report or a statement that there would be adverse consequences because the report was filed.  *Id.*  In Title VII cases discussing the causal connection requirement, the Third Circuit has required evidence of intervening antagonism or retaliatory animus to survive summary judgment.  *See Krouse,* 126 F.3d at 504; *Woodson v. Scott Paper Co.,* 109 F.3d 913, 920–21 (3rd Cir.1997).

Appellant concedes that he has no direct evidence that his employer retaliated against him for reporting that he suspected illegal pirating of software in the office.  Instead, he maintains that there is sufficient circumstantial evidence to support his claim and thus summary judgment is not warranted.  Summary judgment may be granted where the material facts are not in dispute and the movant is entitled to judgment as a matter of law.  Pa. R. Civ. P. 1035.  In reviewing a

---

4.  *Gray* was before the court on preliminary objections.  The court stated that the employee alleged in his complaint that he filed a report with his employer indicating that a third party had violated the law and that his employer was guilty of wrongdoing because he was then terminated.  *Id.*  The court found such allegations insufficient to state a claim under the statute and granted the employee leave to amend his complaint.  *Id.*  This Court affirmed the Commonwealth Court's order.  542 Pa. 607, 669 A.2d 335.

motion for summary judgment, the evidence must be viewed in the light most favorable to the non-moving party. *Borden, Inc. v. Advent Ink Co.*, 701 A.2d 255, 258 (Pa.Super.1997).

Viewing the record before this Court in the light most favorable to Appellant, it establishes the following. Between September 7, 1993, when Appellant began working for the Department of Environmental Resources, and December 20, 1993, when Appellant reported to his boss that he suspected illegal activity, Appellant had no difficulty with anyone at the Department. Appellant's 2/13/96 deposition at 9. On December 20, 1993, Appellant's boss, Paul Linnan, reacted angrily to the report of his suspicions of illegal activity. Appellant testified:

> "And Paul got real angry, said that's not what we hired you for.... He didn't even want to know the details of the pirating thing. Of course, I only said I suspected it. But he brushed it off. He didn't really want to hear about it."

Appellant's 2/27/96 deposition at 51–53. Appellant testified that the more he talked about it, the more agitated Linnan became and when Linnan abruptly ended the meeting, Appellant believed he had offended him. *Id.* at 54–55.

On January 13, 1994, Appellant met with Paul Linnan and his supervisor, Lynda Ronemus, for an interim performance evaluation. His overall rating was "Needs improvement." *See* 1/13/94 Employe Performance Review. Appellant expressed that he disagreed with the evaluation. *See id.* This was Appellant's first indication that there was dissatisfaction with his work. Appellant's 2/13/96 deposition at 26; *see also* Appellant's 2/27/96 deposition at 93, 224.

On the same day, Appellant was given three priority projects with deadlines. One project involved taking an inventory of computer equipment. Appellant testified that his co-workers did not cooperate with him and hampered his ability to complete the project. *See* Appellant's 2/13/97 deposition at 165; Appellant's 2/27/96 deposition at 112, 216. Appellant maintained that the lack of cooperation he received at work was a change from how he was treated before January 13.

Appellant's 2/27/96 deposition at 194; Appellant's 4/22/96 deposition at 44–45. Appellant stated that after January 13, Linnan and Ronemus interfered with his ability to do his job. Appellant's 2/27/96 deposition at 111–12. He testified:

All of a sudden I started to be taking on this project, that project. I got less and less cooperation from the PC coordinators. A lot of things changed after January 13th that made it very difficult for me to do my job.

*Id.* at 112. Appellant sought help from Ronemus to get his coworkers to cooperate but she did not intervene. *Id.* at 113.

While Appellant received extensions of time to finish his assignments through the intervention of his union representative, he did not complete them. *See id.* at 131–33. Appellant's second performance evaluation was on April 18, 1994. Linnan rated Appellant "Unsatisfactory." *See* 4/15/94 Employe Performance Review. Appellant was suspended and ultimately terminated effective April 26, 1994.

Considering this evidence in its entirety, I conclude that it is insufficient to allow a jury to reasonably find that Appellant's employer engaged in antagonistic behavior against Appellant after his report of illegal activity, that led to his unsatisfactory performance evaluation and termination of employment. While in another case the circumstances may permit a jury to infer that a report of wrongdoing led to an employee's dismissal, such a factual scenario is not present here. Thus, I would affirm the decision of the lower court.