**Stephanie M. SEA, Petitioner,**

v.

**James M. SEIF, Secretary, Commonwealth of Pennsylvania, Department of Environmental Protection, and its agent, Cindy Lauderbach, Respondents.**

Commonwealth Court of Pennsylvania.

Argued March 4, 2003.

Decided Sept. 18, 2003.

Robert S. Mirin, Harrisburg, for petitioner.

Sarah C. Yerger, Harrisburg, for respondents.

BEFORE: COLINS, President Judge, and LEADBETTER, Judge, and KELLEY, Senior Judge.

OPINION BY Judge LEADBETTER.

Stephanie M. Sea sued the Department of Environmental Protection (DEP), the Secretary of Environmental Protection, James M. Seif, and her immediate supervisor, Cindy Lauderbach, for wrongful termination from her job as a clerk typist. In her complaint, Sea contends that DEP violated the Whistleblower Law.[1] In a preliminary objection in the nature of a demurrer, DEP seeks dismissal of the complaint on the ground that Sea has failed to state a cause of action. For the reasons

---

1. Act of December 12, 1968, P.L. 1559, §§ 1—8, 43 P.S. §§ 1421—1428.

set forth below, we sustain the preliminary objection.

The complaint alleges the following facts. Sea began work at DEP on September 13, 1999. On February 3, 2000, Sea's supervisor told her that she was not performing up to expectations and would not be recommended for permanent civil service status, but her probationary period would be extended an additional six months. On February 24, 2000, Sea met during her lunch period with an agent of the Federal Bureau of Investigation concerning an investigation of Tracy Seyfert, for whom Sea had provided clerical support during her previous employment for the Republican Caucus in the Pennsylvania House of Representatives. Following the meeting with the FBI, Sea returned to work but shortly thereafter requested permission to leave work early due to stress and anxiety. Lauderbach, Sea's supervisor, "questioned Plaintiff at length and . . . opined that Plaintiff's reaction to the interview was 'odd' and Lauderbach also indicated that no one in the Secretary's office had ever been called to testify before." (Complaint, Paragraph 12). She refused Sea permission to leave early, but allowed her to take a work break and directed her to return to finish the assignments that needed to be completed by days end. Sea remained at work until 5:00 p.m. but failed to complete the days work and left the uncompleted paperwork on top of her desk.

The following day, a Friday, Sea did not report for work. Her mother called to report that Sea was ill; she did not mention the paperwork on Sea's desk. Later that day, Sea's supervisor discovered the uncompleted work of the previous day.

The following Monday, when Sea returned to work, her supervisor conducted a pre-disciplinary meeting, which Sea attended with a union representative. At the meeting, Sea's supervisor indicated dissatisfaction with Sea's failure to complete the work assignment on February 24. At the conclusion of the meeting, Sea was suspended and two days later DEP terminated her employment.

Thereafter, Sea filed a complaint in the Court of Common Pleas of Dauphin County (common pleas) seeking reinstatement and back pay on the ground that her termination violated the prohibition under the Whistleblower Law against discharging an employee for cooperating in the investigation or prosecution of wrongdoing or waste reported under the Law.[2] Preliminary objections were filed, claiming that common pleas lacked jurisdiction in an action against DEP, a Commonwealth agency, as well as raising the demurrer now at issue. Common pleas agreed with the first objection and directed transfer to our court. In support of its demurrer, DEP contends that no cause of action exists under the Law against an employer that is not the subject of a report of wrongdoing under the Law. DEP argues that at a minimum a cause of action under the Law requires some nexus between the wrongdoing about which an employee "blew the whistle" and the adverse employment action that constitutes the prohibited retaliatory act. We agree.

■ In deciding a preliminary objection in the nature of a demurrer, we accept as true the fact averments in the complaint and all reasonable inferences arising there from. We grant the objection only when the law clearly does not permit recovery.

---

2. Section 4(a) of the Whistleblower Law creates a cause of action for retaliatory discharge as follows: "A person who alleges a violation of this act may bring a civil action in a court of competent jurisdiction for appropriate injunctive relief or damages, or both, within 180 days after the occurrence of the alleged violation." 43 P.S. § 1424(a).

*Harrisburg Sch. Dist. v. Hickok*, 781 A.2d 221, 226 (Pa.Cmwlth.2001). In her complaint, Sea avers that DEP terminated her employment in retaliation for her cooperation in an investigation and criminal prosecution of State Representative Tracy Seyfert. Sea contends that in terminating her employment for this reason, the DEP violated Section 3 of the Law, which provides, as follows:

Protection of employees

(a) Persons not to be discharged.—No employer may discharge, threaten or otherwise discriminate or retaliate against an employee regarding the employee's compensation, terms, conditions, location or privileges of employment because the employee or a person acting on behalf of the employee makes a good faith report or is about to report, verbally or in writing, to the employer or appropriate authority an instance of wrongdoing or waste.

(b) Discrimination prohibited.—No employer may discharge, threaten or otherwise discriminate or retaliate against an employee regarding the employee's compensation, terms, conditions, location or privileges of employment because an employee is requested by an appropriate authority to participate in an investigation, hearing or inquiry held by an appropriate authority or in a court action.

43 P.S. § 1423. In particular, Sea contends that DEP violated the prohibition in subsection (b) against retaliation for her participation in the Seyfert investigation.

In *Gray v. Hafer*, 168 Pa.Cmwlth. 613, 651 A.2d 221 (1994), *aff'd*, 542 Pa. 607, 669 A.2d 335 (1995), this court examined in detail the necessary elements of a cause of action under the Whistleblower Law. *Gray* involved a claim under Section 3(a) in which, as here, the employing agency [the Department of Auditor General, or DAG] was not the subject of the report of wrongdoing. Rather, the employee—an investigator for DAG—had reported criminal acts within a department of Temple University. The Auditor General filed preliminary objections in the nature of a demurrer, claiming that the wrongdoing reported under the Whistleblower Law had to be that of the retaliating employer, not that of a third party. While we stopped short of fully accepting this principle,[3] we did hold that the reported wrongdoing must either be that of the employer or a violation of a law or code of conduct that the employer is charged to enforce for the good of the public. Because it was impossible to tell from the complaint whether the reported criminal violations were of statutes the Auditor General is charged to enforce for the good of the public or of laws unrelated to her duties, the complaint was dismissed with leave to amend. This holding was cited with approval by our Supreme Court in *Golaschevsky v. Dep't of Env't Protection*, 554 Pa. 157, 161–62, 720 A.2d 757, 759 (1998).

■ Sea contends that *Gray* is inapplicable to a cause of action based upon Section 3(b), because the analysis in *Gray* was predicated upon the definition of "wrongdoing" in the Whistleblower Law, and that term is used only in 3(a) and not 3(b). However, we do not believe that the absence of the word "wrongdoing" in Section 3(b) is significant. In the context of the Whistleblower Law it is abundantly clear that the "investigation, hearing or inquiry held by an appropriate authority" referenced in Section 3(b) necessarily involves the investigation of wrongdoing. Section

---

**3.** We did, however, note that we "have been unable to find any cases under the Federal Whistleblower statute, 5 U.S.C. § 2302(b)(8), or our own that deal with anything but internal wrongdoing." *Id.* at 224 n. 3.

4(b), which applies to both Sections 3(a) and 3(b) provides:

> **(b) Necessary showing of evidence.—** An employee alleging a violation of this act must show by a preponderance of the evidence that, prior to the alleged reprisal, the employee or a person acting on behalf of the employee had reported or was about to report in good faith, verbally or in writing, an instance of wrongdoing or waste to the employer or an appropriate authority.

Thus, even if the term "wrongdoing" is absent from Section 3(b) itself, it is incorporated as a necessary element of a Section 3(b) cause of action through Section 4(b).

Applying the standard announced in *Gray* to Section 3(b) as well as to Section 3(a) is consistent with the overall purpose of the Whistleblower Law to encourage government employees to come forward with information necessary to protect the public interest even where that information is damaging to the agency which employs them. The Law is designed to protect "whistleblowers," defined as "[a] person who witnesses or has evidence of wrongdoing or waste *while employed* and who makes a good faith report of the wrongdoing or waste, verbally or in writing, to one of the person's superiors, to an agent of the employer or to an appropriate authority." Section 2 of the Law, 43 P.S. § 1422 (emphasis added). Use of the term "while employed" strongly suggests that the General Assembly intended a nexus between the public employment and the wrongdoing or waste about which he provides information. In addition, their context in the statute makes clear that Sections 3(a) and 3(b) are intended to be mirror provisions which protect such employees to the same extent whether they initiate a report of wrongdoing or simply cooperate

in an inquiry initiated by lawful authorities. To apply Section 3(b) to a broader range of unlawful activity by third parties unrelated to the government function of the public employee or the employing agency would be inconsistent with this intent, as well as outside the fundamental purpose of the act.

■ Finally, as our Supreme Court stated in *Golaschevsky, Gray's* limitation "was principally concerned with preventing employees from invoking the Whistleblower Law in cases where there could be no rational relation between the alleged illegal activity and the employer's conduct." *Id.* at 162, 720 A.2d at 759. This concern is equally applicable whether the employee initiates the "blow of the whistle" or is invited to do so in the context of an official investigation initiated by others. Accordingly, we extend the holding of *Gray* to Section 3(b): if the investigation, hearing or inquiry does not involve acts of the employer itself, it must at a minimum involve violation of statutes or codes which the employer is charged to enforce for the benefit of the public, *i.e.*, there must be a clear nexus between the employer's performance of its public duty and the subject of the investigation.

■ Applying this standard, this case is even further from stating a cause of action than *Gray*. Gray was an investigator for the Department of Auditor General, and submitted his report after investigating Temple pursuant to his duties. Thus, there was a realistic possibility that the wrongdoing he reported fell within the Auditor General's jurisdiction, and Gray was allowed to file an amended complaint so he could make such an averment if it were true. Here, it is undisputed that the statutory duties of Sea's employer, the Department of Environmental Protection, have nothing to do with investigating activ-

ities of members of the General Assembly,[4] and nothing Sea could aver by way of an amended pleading can change that. Therefore, we will sustain the preliminary objection of the respondents and dismiss Sea's complaint with prejudice.[5]

### ORDER

AND NOW, this 18th day of September, 2003, the PRELIMINARY OBJECTION in the nature of a demurrer in the above captioned matter is hereby SUSTAINED and the COMPLAINT is DISMISSED with prejudice.

4. It is undisputed that the activities for which Representative Seyfert was investigated and charged were not environmental crimes.

5. In light of our disposition of this issue, we need not address other grounds raised by respondents in their demurrer, such as the absence of a causal connection between Sea's cooperation with the FBI and her termination. We note, however, that such a connection may not be predicated upon "vague and inconclusive circumstantial evidence." *Golaschevsky*, 554 Pa. at 163, 720 A.2d at 759. Rather, a petitioner must show "by concrete facts or surrounding circumstances that the report led to [his or her] dismissal, such as that there was specific direction or information [s/he] received not to file the report or there would be adverse consequences ..." *Gray*, 651 A.2d at 225.