**Bernadette EVANS, Appellant**

v.

**THOMAS JEFFERSON UNIVERSITY and Mary Katz Vandegrift.**

Commonwealth Court of Pennsylvania.

Argued Oct. 10, 2013.

Decided Dec. 4, 2013.

Gregg L. Zeff, Mount Laurel, NJ, for appellant.

Michon La Vie Crawford, Philadelphia, for appellees.

BEFORE: McGINLEY, Judge, and LEAVITT, Judge, and JAMES GARDNER COLINS, Senior Judge.

OPINION BY Senior Judge JAMES GARDNER COLINS.

This matter is an action brought under the Whistleblower Law[1] by plaintiff Bernadette Evans (Evans) against her former employer, Thomas Jefferson University (TJU), and the program director of TJU's addiction clinic where she worked, Mary Kate Vandegrift (Vandegrift) (collectively, Defendants). Evans alleged that TJU's termination of her employment in November 2010 was in retaliation for a report that she made concerning Vandegrift in March or April 2010. She appeals from an order of the Philadelphia County Court of Common Pleas (trial court) granting summary judgment in favor of Defendants. For the reasons set forth below, we affirm.

Section 3(a) of the Whistleblower Law provides:

> No employer may discharge, threaten or otherwise discriminate or retaliate against an employee regarding the employee's compensation, terms, conditions, location or privileges of employment because the employee or a person acting on behalf of the employee makes a good faith report or is about to report, verbally or in writing, to the employer or appropriate authority an instance of wrongdoing or waste.

43 P.S. § 1423(a).[2] The Whistleblower Law provides a civil cause of action to employees for violations of its provisions. Section 4 of the Whistleblower Law, 43 P.S. § 1424. To prove a cause of action for wrongful discharge under the Whistleblower Law, the plaintiff must show both a protected report of wrongdoing or waste and a causal connection between that report and the discharge. *O'Rourke II v. Commonwealth*, 566 Pa. 161, 171, 778 A.2d 1194, 1200 (2001); *Golaschevsky v. Department of Environmental Protection*, 554 Pa. 157, 161–63, 720 A.2d 757, 758–59 (1998); *Gray v. Hafer*, 168 Pa.Cmwlth. 613, 651 A.2d 221, 225 (1994), *aff'd without op.*, 542 Pa. 607, 669 A.2d 335 (1995).

Evans, a licensed practical nurse, was hired by TJU in July 2008 as a dispensing nurse at TJU's Maternal Addiction Treatment Evaluation and Research Program (MATER). (Evans Dep. at 17–19, 21, Reproduced Record (R.R.) at 141a–142a; Defendants' Summary Judgment Motion ¶ 6, R.R. at 4a; Plaintiff's Surreply in Response to Defendants' Motion for Summary Judgment (Plaintiff's Surreply) ¶ 6, R.R. at 77a.) TJU's employee policies list as grounds for discharge "inconsiderate treatment in the care of patients," "[i]nterfering with the work performance of another employee [or] threatening, intimidating or coercing another employee," and "[o]ther misconduct." (TJU Policy No. 113.03.01, R.R. at 240a–241 a, 243a; Plaintiff's Surreply ¶ 5, R.R. at 77a.)

Prior to the report that Evans made concerning Vandegrift, she received two evaluations. A January 2009 competency evaluation marked her as "Needs Improvement" in tone of patient interactions and stated: "some patients have reported that Bernadette's tone is harsh when giving

---

1. Act of December 12, 1986, P.L. 1559, *as amended*, 43 P.S. §§ 1421–1428.

2. The Whistleblower Law applies only to employees of a "public body." Section 2 of the Whistleblower Law, 43 P.S. § 1422. However, the Whistleblower Law defines "public body" to include, in addition to state and local government, "[a]ny other body ... which is funded in any amount by or through Commonwealth or political subdivision authority or a member or employee of that body." *Id.* Although the parties do not discuss this, TJU's status as a "public body" subject to the Whistleblower Law is apparently based on receipt of public funds. *See Riggio v. Burns*, 711 A.2d 497, 500 (Pa.Super.1998) (*en banc*) (receipt of government funds made hospital a "public body" under the Whistleblower Law).

feedback or direction. Addressed [with] Bernadette." (1/09 Competency Evaluation, Supplemental Reproduced Record (Supp. R.R.) at 14b.) Evans' June 2009 annual performance evaluation gave her an overall rating of "Outstanding" and ratings of "Highly Effective" and "Outstanding" in all categories other than "Respect/Customer Service" and "therapeutic engagement of patients." (6/09 Employee Performance Evaluation, R.R. at 215a–219a.) In those two categories, Evans received a rating of "Effective," and the evaluation noted that she *"[a]lways* acts for patient safety and their best interest (her methods are occasionally misinterpreted as harsh, even though her feedback is critical + *needed* !!)" *(Id.,* R.R. at 216a) (emphasis in original). Evans' supervisor, Jeneane Burke, told Evans in conjunction with this June 2009 evaluation that some patients thought that she was "harsh" toward them. (Evans Dep. at 19, 95–96, R.R. at 141a, 160a.) Burke also told Evans, outside of this evaluation, that patients had complained that Evans was rude and disrespectful to them. (Evans Dep. at 97–98, 102, R.R. at 161a–162a.) Evans admitted that there were "plenty of incidents" of patient complaints because the patients "are just complaining clients" who "complain whenever they don't get their way." (Evans Dep. at 102, 112–13, R.R. at 162a, 164a–165a.)

In approximately March or April 2010, Evans refused to administer methadone to a patient because she believed that the patient was intoxicated based on her observations of the patient's condition and her familiarity with the patient. (Evans Dep. at 41–43, 51, R.R. at 147a, 149a.) It was MATER's policy that methadone should not be given to a patient if the patient is intoxicated because of the danger of overdose or drug interactions. (Burke Dep. at 59, R.R. at 203a; Evans Dep. at 26–28, R.R. at 143a.) When Evans refused to provide methadone and requested a urine sample, the patient became angry, used profanity and went to complain to Vandegrift, the MATER program director. (Evans Dep. at 43–45, 54, R.R. at 147a–148a, 150a.) Vandegrift did not believe that the patient appeared intoxicated and sent clinic director Colleen Maguire to ask Evans to medicate the patient. (Evans Dep. at 45–46, 54, R.R. at 148a, 150a.) Evans told Maguire that she would not administer methadone to the patient. (Evans Dep. at 46–47, R.R. at 148a.) Maguire went back to Vandegrift and returned, stating that she, Maguire, would medicate the patient. (Evans Dep. at 47, R.R. at 148a.) Evans dispensed the methadone to Maguire and Maguire administered the methadone to the patient. (Evans Dep. at 47–49, R.R. at 148a–149a.) Maguire was a registered nurse. (Complaint ¶ 16, Supp. R.R. at 28b; Vandegrift Dep. at 45, Supp. R.R. at 35b.) Maguire medicated the patient because Vandegrift told her to do so, but Evans did not know whether or not Maguire thought that the patient was intoxicated. (Evans Dep. at 46–47, 58–64, 70, R.R. at 148a, 151a–152a, 154a.) Vandegrift was not a nurse. (Vandegrift Dep. at 45, Supp. R.R. at 35b.)

After Maguire left, Evans called Burke and reported what had happened. (Evans Dep. at 48–50, R.R. at 148a–149a.) A meeting attended by Burke, Evans, Vandegrift and Maguire was held a few days later. (Evans Dep. at 46, 52, R.R. at 148a–149a.) Vandegrift stated at the meeting that she spoke to the patient and was familiar with the patient, and that the patient did not appear to her to be intoxicated. (Evans Dep. at 54, 65, R.R. at 150a, 153a.) Vandegrift also stated that the patient said that Evans was rude to her, was prejudiced against white people and treated addicts differently. (Evans Dep. at 45–46, R.R. at 148a.) Evans stated at the

meeting that she knew the patient from a previous clinic, that she knew the patient "was high," and that she felt that it was "for [the patient's] safety not to medicate her." (Evans Dep. at 54, R.R. at 150a.) After the meeting, Evans thought that Vandegrift changed how she acted toward her, and that Vandegrift began acting· unfriendly and critical of her. (Evans Dep. at 67–68, 70–84, R.R. at 153a–157a.) Evans did not feel that anyone at MATER acted hostile toward her other than Vandegrift. (Evans Dep. at 78–79, R.R. at 156a.) Evans also felt that Vandegrift acted rude or hostile to at least four other MATER employees. (Evans Dep. at 153–57, R.R. at 175a–176a.)

On April 22, 2010, Evans received a warning concerning her behavior toward patients. (Evans Dep. at 98–100, R.R. at 161a; Notification of Warning, R.R. at 223a.) The warning stated that "we are receiving multiple complaints that you are being rude and disrespectful when interacting with some patients at the dispensing window," and that "[i]t is not acceptable to treat any patients without dignity and respect." (Notification of Warning, R.R. at 223a.) Burke was the person who issued the warning and made the decision to issue the warning, although she consulted with Vandegrift before it was written out. (Notification of Warning, R.R. at 223a; Burke Dep. at 61–63, R.R. at 203a–204a.) Evans was not sure whether this warning was issued before or after her report about Vandegrift. (Evans Dep. at 98–99, R.R. at 161a.)

On May 27, 2010, subsequent to her report about Vandegrift, Evans received her annual Employee Performance Evaluation for the period June 2009 to June 2010. (6/10 Employee Performance Evaluation, R.R. at 224a–230a.) In this evaluation, her overall score dropped from "Outstanding" to "Effective." (Id., R.R. at 229a.) Many of her ratings were lower than in her previous evaluation. (Id., R.R. at 225a–226a.) All of the ratings, however, were "Effective" or better, except in the categories of "Respect/Customer Service," "Management Support," and "Therapeutic engagement of patients," in which she was rated as "Needs Improvement." (Id.) The evaluation noted that Evans needed to "gain self-awareness of how her feedback to patients is interpreted as too harsh by patients." (Id., R.R. at 225a.)

On August 12, 2010, Burke issued a formal disciplinary warning to Evans concerning an additional patient complaint. (Formal Warning # 1, R.R. at 231a; Evans Dep. at 117–19, R.R. at 166a.) This warning was given because a patient reported that Evans had spoken to her in a negative tone of voice and that Evans changed the requested urine screen from "unsupervised" to "supervised" as a result of the negative interaction between her and the patient. (Formal Warning # 1, R.R. at 231a.) Evans disputed that her tone of voice toward the patient was negative, but did not dispute that the incident occurred or that the patient complained. (Evans Dep. at 103, 118–19, R.R. at 162a, 166a.)

On September 14, 2010, Evans received a second formal warning and three-day suspension without pay for an interaction with a colleague in a "rude, disrespectful, intimidating" manner. (Notification of Warning Warning # 2, R.R. at 232a; Evans Dep. at 123, 131–32, R.R. at 167a, 169a.) This disciplinary action arose from a complaint by a newly hired counselor. (Evans Dep. at 72, 113, 123, 131–32, R.R. at 154a, 165a, 167a, 169a.) According to Evans, the incident consisted of Evans asking the new counselor to address her in a more formal way than most employees addressed Evans, "being that she was much younger than I was." (Evans Dep.

at 123–24, R.R. at 167a.) While Evans viewed this request as proper because "I have children her age," she admitted that the new counselor acted "puzzled" at the request and that after the conversation, she "stopped speaking to me as much as she used to." (Evans Dep. at 125–30, R.R. at 168a–169a.)

On October 27, 2010, an incident occurred between Evans and another newly hired counselor at the clinic. (Evans Dep. at 113–14, 164, R.R. at 165a, 177a; Burke to Vandegrift Email and Memo, R.R. at 233a–234a.) A dispute arose as to whether the counselor was following clinic procedure concerning take-home pill bottle call backs, which are checks to make sure that patients are not diverting the methadone to others. (Evans Dep. at 114–15, 166–67, R.R. at 165a, 178a; Vandegrift Dep. at 169, R.R. at 221a; Vandegrift to Burke Email, R.R. at 236a.) Evans told the counselor that "you can't do that," and the counselor complained to her superiors about how Evans acted toward her in this discussion. (Evans Dep. at 166–67, R.R. at 178a; Maguire Memo, Supp. R.R. 33b.) Burke interviewed a clinic nurse who was present at the time of the incident, and reported that the nurse told her that Evans "wasn't as bad as she can get and I think she tried to tone it down," but that she could "see how someone who didn't know Bernadette's personality could think she was being harsh" or might feel intimidated. (Burke Dep. at 98–99, R.R. at 206a; Burke to Vandegrift Email and Memo, R.R. at 233a–234a.) Burke discussed the October 27, 2012 incident between Evans and the counselor with Vandegrift. (Burke Dep. at 115–25, R.R. at 210a–212a; Burke to Vandegrift Emails, R.R. at 233a–236a.) The emails between Burke and Vandegrift refer to Evans' interactions with patients and staff and whether she could change her behavior, and do not contain any reference to Evans'

report against Vandegrift. (Burke to Vandegrift Emails, R.R. at 233a–236a.) On November 4, 2010, Evans was suspended indefinitely without pay for "rude, discourteous and unprofessional behavior." (Burke Letter to Evans, R.R. at 237a.) On November 5, 2010, the suspension was modified to termination of employment, and Evans was discharged for "rude, intimidating, discourteous and unprofessional behavior." (Burke Letter to Evans, R.R. at 247a.)

On May 2, 2011, Evans filed this Whistleblower Law action against Defendants. On September 4, 2012, following the completion of discovery, Defendants filed a motion for summary judgment asserting that the facts as to Evans' report concerning Vandegrift, the reason for Evans' discharge and Evans' work history were undisputed, and that given these facts, Evans could not satisfy the requirement of the Whistleblower Law of a report of wrongdoing or show that her discharge was in retaliation for a report of wrongdoing. (Defendants' Motion for Summary Judgment and supporting Memorandum of Law, R.R. at 3a–40a.) In accordance with Philadelphia County Local Rule of Civil Procedure 1035.2(a)(2), Defendants' motion was in numbered paragraphs and cited to supporting pleadings and discovery. (Defendants' Motion for Summary Judgment, R.R. at 3a–22a.) The motion contained a total of 104 paragraphs, of which paragraphs 28 through 104 appear after the heading "ARGUMENT." (*Id.*)

Evans filed an opposition to Defendants' summary judgment motion consisting of legal arguments and factual contentions with citation to supporting discovery, but did not respond to any of the paragraphs of Defendants' summary judgment motion. (Plaintiff's Response to Defendants' Motion for Summary Judgment and Memorandum of Law, R.R. at 43a–60a.) On

October 26, 2012, Defendants filed a reply brief in which they asserted that Evans' failure to respond to the numbered paragraphs of their motion admitted the facts set forth in those paragraphs and that the admission of paragraphs 12, 13, 18, and 24–26 entitled them to summary judgment. (Defendants' Reply in Support of Motion for Summary Judgment at 1–4, R.R. at 63a–66a.)

On October 31, 2012, Evans filed a sur-reply in which she included paragraph by paragraph responses to paragraphs 1 through 26 of Defendants' summary judgment motion. (Plaintiff's Surreply at 2–4, R.R. at 77a–79a.) In this surreply, Evans did not genuinely dispute most of the factual allegations in 23 of those 26 paragraphs, either expressly admitting them (Plaintiff's Surreply ¶¶ 1–4, 6–7, 9, 14–16, 20–23, R.R. at 77a–79a), or not disputing the substance of the facts asserted with any citation that supported a denial. (Defendants' Motion for Summary Judgment ¶¶ 5, 8, 10–11, 13, 17–19, 25, R.R. at 4a–8a; Plaintiff's Surreply ¶¶ 5, 8, 10–11, 13, 17–19, 25, R.R. at 77a–79a.) Evans did not make paragraph-by-paragraph responses to paragraphs 28 through 104, stating that she could not do so "because they contain legal arguments not allegations of fact." (Plaintiff's Surreply at 4, R.R. at 79a.)

On November 7, 2012, the trial court entered an order directing that Evans "respond paragraph by paragraph to Defendant's Motion for Summary Judgment," and that "[f]ailure to respond paragraph by paragraph shall result in the court concluding that the factual allegations of each paragraph are deemed admitted." (Trial Court Order of November 7, 2012, R.R. at 86a.) Evans, in response to this order, faxed a letter referencing the surreply to

the trial court on November 9, 2012 and did not file any other paragraph-by-paragraph response. (Trial Court Op. at 3.)

On November 14, 2012, the trial court granted Defendants' summary judgment motion. The court ruled that Evans failed to comply with Philadelphia County Local Rule of Civil Procedure 1035.2(a)(4) and that the factual allegations in Defendants' motion were therefore admitted, including all factual allegations in paragraphs 28 through 104. (Trial Court Op. at 3–8.) The trial court concluded that paragraphs 72, 82–84, 90–91, and 95–98 of Defendants' summary judgment motion alleged facts, not conclusions of law, and that the facts set forth in those paragraphs concerning the complaints and disciplinary actions against Evans were admitted by her failure to answer those paragraphs. (*Id.* at 7–8.) The trial court ruled that Defendants were entitled to summary judgment because the undisputed evidence showed that Evans was discharged for her behavior toward patients and co-workers, not because of the report that she made concerning Vandegrift. (*Id.* at 5–6, 8.) Evans filed a timely appeal to this Court on December 4, 2012.[3]

 Evans argues that the trial court erred in deeming her to have admitted paragraphs of Defendants' summary judgment motion and in holding that there was insufficient evidence of a causal connection to support her Whistleblower Law claim. While we agree that the first of these contentions is meritorious, it does not constitute grounds for reversal because, disregarding those admissions, the evidence remains insufficient to prove the essential elements of a Whistleblower Law cause of action.

---

**3.** Our standard of review of the trial court's grant of summary judgment is *de novo* and the scope of review is plenary. *Pyeritz v.*

*Commonwealth*, 613 Pa. 80, 88, 32 A.3d 687, 692 (2011).

Philadelphia County Local Rule of Civil Procedure 1035.2(a) provides that "the adverse party ... must file a response to the motion for summary judgment" that

shall be divided into paragraphs, numbered consecutively, corresponding to the numbered paragraphs of the motion for summary judgment. The response shall state whether each of the allegation [sic] is admitted or denied. No general denial is acceptable. The factual reasons for the denial or dispute must be specifically stated and the "record," (as that term is defined in Pa.R.C.P. No. 1035.1) supporting the denial or dispute must be attached as an exhibit.

Phila. R.C.P. No. 1035.2(a)(4). Failure to comply with applicable rules for responding to a summary judgment motion can constitute a basis for concluding that there is no genuine dispute of material fact and for granting summary judgment against the non-compliant party. *See* Pa. R.C.P. No. 1035.3(d) (providing that "[s]ummary judgment may be entered against a party who does not respond" to the motion); *Harber Philadelphia Center City Office Ltd. v. LPCI Ltd. Partnership,* 764 A.2d 1100, 1104–05 (Pa.Super.2000). Accordingly, where a summary judgment motion subject to Philadelphia Local Rule 1035.2(a) clearly identifies paragraphs as setting forth the facts that it claims are undisputed, a trial court may properly apply Philadelphia Local Rule 1035.2(a)(4) to hold that the adverse party's failure to specifically respond to those paragraphs constitutes an admission that the facts set forth by those paragraphs are undisputed.

The paragraphs of Defendants' motion that the trial court deemed admitted do not meet this standard. Paragraphs 28 through 104 were placed by Defendants in the legal argument section of their motion, not in the section setting forth the undisputed facts on which the motion was based. Although 22 of these paragraphs state factual allegations with citations to supporting material and with no legal citations or legal argument (Defendants' Motion for Summary Judgment ¶¶ 36, 38, 45–46, 52, 58, 74–75, 84–90, and 92–98, R.R. at 10a–14a, 17a–21a), all of those factual paragraphs appear under the heading "ARGUMENT" and they are intertwined with dozens of other paragraphs setting forth the applicable law and legal conclusions. (Defendants' Motion for Summary Judgment, R.R. at 9a–22a.) Indeed, in their briefing below, Defendants themselves treated only the paragraphs before the "ARGUMENT" section of their motion as admitted by Evans' failure to respond. (Defendants' Reply in Support of Their Motion for Summary Judgment at 3, R.R. at 65a.) If Defendants sought to require a specific response either admitting a fact or demonstrating that the particular fact was in dispute and to enforce failure to comply as an admission, it was incumbent on them to unambiguously and clearly set forth those paragraphs as facts, rather than burying them among paragraphs of legal arguments. The trial court therefore erred in ruling that Evans' failure to respond to paragraphs 28 through 104 of Defendants' summary judgment motion was a binding admission of the facts set forth in those paragraphs.

This error, however, does not affect the correctness of the trial court's conclusion that Evans could not prove the essential elements of her Whistleblower Law claim. The fact that Evans' pleading deficiencies were not binding admissions does not create any genuine dispute of material fact; it only permits examination of the evidence submitted by the parties to determine whether the material facts on which the motion was based were in dispute. Here, the critical facts on which the trial court based summary judgment were not genuinely in dispute. There was no dispute

that the only stated reasons for the discharge and disciplinary actions against Evans were her behavior toward patients and co-workers. (Notification of Warning, R.R. at 223a; Formal Warning # 1, R.R. at 231a; Notification of Warning Warning # 2, R.R. at 232a; Burke Letters to Evans, R.R. at 237a, 247a; Evans Dep. at 98–100, 117–19, 123, 131–32, R.R. at 161a, 166a–167a, 169a.) The evidence was uncontroverted that complaints were made by patients and co-workers concerning Evans' behavior toward them. (Evans Dep. at 102–03, 112–14, 118–19, 123, 125–33, 164, 166–67, R.R. at 162a, 164a–170a, 177a–178a; Maguire Memo, Supp. R.R. 33b.) There was no evidence that anything other than Evans' interactions with patients and co-workers was discussed in making the decision to discharge her. (Burke to Vandegrift Emails, R.R. at 233a–236a.) There was also undisputed evidence that issues concerning Evans' behavior toward patients pre-dated her report concerning Vandegrift. (1/09 Competency Evaluation, Supp. R.R. at 14b; Evans Dep. at 94–96, R.R. at 160a.)

 The causal connection that the Whistleblower Law requires must be demonstrated "by concrete facts or surrounding circumstances that the report of wrongdoing or waste led to the plaintiff's dismissal, such as that there was specific direction or information received not to file the report or that there would be adverse consequences because the report was filed." *Golaschevsky*, 554 Pa. at 163, 720 A.2d at 759 (quoting *Gray* ) (brackets omitted); *see also Sea v. Seif,* 831 A.2d 1288, 1293 n. 5 (Pa.Cmwlth.2003). The Whistleblower Law "is not designed to provide insurance against discharge or discipline for an employee who informs on every peccadillo of his fellow employees." *Golaschevsky v. Department of Environmental Resources,* 683 A.2d 1299, 1304 (Pa.

Cmwlth.1996), *aff'd,* 554 Pa. 157, 720 A.2d 757 (1998). The burden shifts to the defendant to show a separate and legitimate reason for its actions only where plaintiff has satisfied the threshold showing of a causal connection. *O'Rourke,* 566 Pa. at 171–72, 778 A.2d at 1200. "[V]ague and inconclusive circumstantial evidence" is insufficient to satisfy that threshold burden to show a causal connection and shift the burden to the defendant to justify its actions. *Golaschevsky,* 554 Pa. at 163, 720 A.2d at 759; *Sea,* 831 A.2d at 1293 n. 5.

 Evans argues that despite the lack of direct evidence, she could show a causal connection between her report and her discharge for "rude, intimidating, discourteous and unprofessional behavior" because (i) the discharge and most or all of the warnings and disciplinary actions for conduct toward patients and coworkers occurred after the report; (ii) she received a rating of "Outstanding" in her annual review nine months before the report and a lower, but satisfactory, rating of "Effective" in her annual review a few months after the report; and (iii) she felt that Vandegrift treated her differently and in a hostile manner after the report. (Appellant's Br. at 20–21.) Given the undisputed fact that Evans had been told before 2010 that there were patient complaints that she acted "harsh" and had received the same "Needs Improvement" rating concerning her interaction with patients in January 2009 as she did after the report, and the lack of any genuine dispute that the patient complaints and co-worker complaints for which she was disciplined actually occurred, this evidence is insufficient to meet her burden of showing a causal connection.

 In a Whistleblower Law action, the mere fact that the discharge occurred a few months after a report of wrongdoing and that the first formal negative actions

by the employer occurred after the report are *not* enough to show a causal connection. *Golaschevsky*, 554 Pa. at 163–64, 720 A.2d at 759–60; *see also Gray*, 651 A.2d at 225 (fact that plaintiff made a report and that "within a given amount of time" later was fired is insufficient to state a claim under the Whistleblower Law). In *Golaschevsky*, the plaintiff showed (i) that he received a negative performance evaluation three weeks after his report of wrongdoing and received another negative evaluation four months after his report; (ii) that he had not been told of any problems with his work before his report of wrongdoing; (iii) that his supervisor got angry with him when he made the report; and (iv) that he subjectively felt that supervisors and co-workers treated him differently and stopped co-operating with him after the report. 554 Pa. at 159–60, 163–64, 167–68, 720 A.2d at 758–62. Our Supreme Court held that this evidence that was insufficient to satisfy a Whistleblower Law plaintiff's burden of demonstrating a causal connection between his report of wrongdoing and his discharge four months later for failure to meet minimum performance standards and affirmed summary judgment. 554 Pa. at 163–64, 720 A.2d at 759–60. The evidence submitted by Evans is the very same type of evidence that the Supreme Court held insufficient in *Golaschevsky*.

The cases that Evans contends support her claim are inapposite. None of these cases involves or discusses the Whistleblower Law. *See Fallecker v. Slippery Rock University*, 2008 WL 9399222 (Pa. Cmwlth. No. 1929 C.D.2007, filed July 28, 2008) (disability discrimination retaliation claim); *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271 (3d Cir.2000) (sexual harassment claim); *Keller v. Orix Credit Alliance, Inc.*, 130 F.3d 1101 (3d Cir.1997) (*en banc*) (age discrimination claim); *Bequeath v. L.B. Foster Co.*, 367 F.Supp.2d

779 (W.D.Pa.2005) (age discrimination claim). In two of those cases, the courts held that summary judgment was properly granted against the plaintiffs for insufficient causal connection. *Fallecker*, slip op. at 7–11; *Keller*, 130 F.3d at 1108–14. In the two cases where the evidence was held sufficient, it was different and more substantial than the evidence here. *Farrell*, 206 F.3d at 275–76 (plaintiff's superior discharged her just weeks after she rebuffed his sexual advances and that same individual had praised her work and discussed promoting her just before the incident); *Bequeath*, 367 F.Supp.2d at 790–92 (there was evidence, not merely that the defendant's reason for discharging the plaintiff was unsupported, but that the defendant had actual knowledge that its reason was false).

■ Evans also argues that the decision of the Unemployment Compensation Board of Review that she was entitled to unemployment benefits shows that there are material issues of fact as to whether her discharge was retaliatory. (Appellant's Br. at 24–25.) We do not agree. The issue in the unemployment case was whether Evans' behavior rose to the level of willful misconduct sufficient to deny her benefits, not whether TJU had a legitimate reason for discharging her. *See Webb v. Unemployment Compensation Board of Review*, 670 A.2d 1212, 1215 (Pa.Cmwlth. 1996). Nothing in the unemployment decision suggests either that Evans was discharged for any reason other than the co-worker's complaint or that TJU did not believe that Evans had acted rudely to the co-worker. (UCBR Decision and Order, R.R. at 244a–246a.) Indeed, the Unemployment Compensation Board of Review found that "[d]uring the course of her employment, the claimant received warnings about rude behavior to others" and that Evans was discharged for the incident with

the co-worker. (UCBR Decision and Order Findings of Fact ¶¶ 4, 12, R.R. at 244a–245a.)

Moreover, even if Evans had shown a sufficient causal connection between her report concerning Vandegrift and her discharge, her claim would still fail because her report does not constitute a report of wrongdoing under the Whistleblower Law. This issue was raised by Defendants in their motion for summary judgment and was fully briefed by the parties below. (*See* Defendants' Motion for Summary Judgment and supporting Memorandum of Law, R.R. at 13a–15a, 30a–34a; Plaintiff's Response to Defendants' Motion for Summary Judgment, R.R. at 52a–53a.) Although the trial court did not address this issue, this Court may affirm a trial court's order based on grounds different from those on which the trial court relied where other grounds for affirmance exist. *Guy M. Cooper, Inc. v. East Penn School District*, 903 A.2d 608, 618 & n. 9 (Pa.Cmwlth. 2006).

Section 2 of the Whistleblower Law defines "wrongdoing" as "[a] *violation* which is not of a merely technical or minimal nature *of a Federal or State statute or regulation, of a political subdivision ordinance or regulation or of a code of conduct* or ethics designed to protect the interest of the public or the employer." 43 P.S. § 1422 (emphasis added). The only statutes or regulations that Evans claims that were violated are a federal regulation, 42 C.F.R. § 8.12(h)(1), and Section 11 of the Controlled Substance, Drug, Device and Cosmetic Act (the Controlled Substance Act), Act of April 14, 1972, P.L. 233, § 11, *as amended*, 35 P.S. § 780–111(a). (Plain-

tiff's Memorandum of Law in Response to Defendants' Motion for Summary Judgment at 9–10, R.R. at 52a–53a.)[4] The federal regulation provides that methadone may only be "administered or dispensed" by a licensed practitioner, such as a physician or hospital, or by "a pharmacist, registered nurse, or licensed practical nurse, or any other healthcare professional authorized by Federal and State law to administer or dispense opioid drugs." 42 C.F.R. § 8.12(h)(1). Section 11 of the Controlled Substance Act likewise regulates who may administer and dispense controlled substances and permits nurses to directly administer controlled substances to patients. 35 P.S. § 780–111(a) (providing that a "practitioner" may directly administer controlled substances); Section 2 of the Controlled Substance Act, 35 P.S. § 780–102 (defining "practitioner" to include nurses).

■ Neither of these provisions prohibits the conduct reported by Evans, that Vandegrift overrode her assessment that the patient was intoxicated and that Maguire, at Vandegrift's direction, administered methadone to the patient. The only persons who dispensed or administered the methadone, Evans and Maguire, were a licensed practical nurse and a registered nurse. (Evans Dep. 17–18, R.R. at 141a; Complaint ¶ 16, Supp. R.R. at 28b; Vandegrift Dep. at 45, Supp. R.R. at 35b.) Evans' argument that Vandegrift's conduct constituted administration of methadone is without merit. Both the federal statute under which 42 C.F.R. § 8.12(h)(1) was promulgated and the Controlled Substance Act define "administer" as the "application

4. Evans had also originally contended that Vandegrift's conduct violated 21 U.S.C. § 202. (Plaintiff's Response to Defendants' First Set of Interrogatories, Supp. R.R. at 44b; Plaintiff's Memorandum of Law in Response to Defendants' Preliminary Objections,

Supp. R.R. at 58b.) At oral argument, Evans conceded that 21 U.S.C. § 202, a statute concerning the "Practice of Pharmacy and Sale of Poisons in Consular Districts in China," has no applicability here.

... to the body of a patient." 21 U.S.C. § 802(2); 35 P.S. § 780–102. There is no dispute that Vandegrift did not apply methadone to the patient's body.

▪ ■ There was evidence that administering methadone to an intoxicated patient violated an internal MATER safety policy. (Burke Dep at 59, R.R. at 203a; Evans Dep. at 26–28, R.R. at 143a.) A report of violation of an unwritten safety policy, however, does not constitute a report of "wrongdoing" under the Whistleblower Law. *Surmacz v. Department of Public Welfare,* 148 Pa.Cmwlth. 585, 612 A.2d 566, 567–68 (1992) ("code of conduct" under Section 2 of the Whistleblower Law includes only written policies, and report of violation of unwritten medical treatment team policy therefore cannot support a Whistleblower Law claim); *see also Riggio v. Burns,* 711 A.2d 497, 501–03 (Pa.Super.1998) (*en banc*) (report of allegedly unsafe lack of supervision of procedures performed by medical residents does not constitute a report of "wrongdoing" under the Whistleblower Law where it was not shown that any statute, regulation or professional code required supervision). There is no evidence that the policy prohibiting medication of intoxicated patients was a written policy.

Because the trial court correctly concluded that Evans could not prove the essential elements of her Whistleblower Law claim, we affirm the order granting summary judgment.

### *ORDER*

AND NOW, this 4th day of December, 2013, the order of November 14, 2012 of the Philadelphia County Court of Common Pleas in the above-captioned case is AFFIRMED.