## McMinn v. Pennsylvania Rural Water Authority Association

C.P. of Centre County, no. 2002-2516.

*Bernard F. Cantorna,* for plaintiff.
*Robert E. Durrant,* for defendant.

GRINE, *J.,* August 17, 2005—Before this court for consideration is the complaint of plaintiff Stephanie McMinn in which she alleges defendant John H. Hood, director of the Pennsylvania Rural Water Authority As-

sociation, wrongfully terminated her employment in violation of the Whistleblower Law, 43 P.S. §1421 et seq. A non-jury trial was held in the matter on December 2, 2004, at the conclusion of which, this court ordered counsel for plaintiff and defendants to submit suggested findings of fact, conclusions of law, and memorandums of law within 20 days after the receipt of the transcript. Counsel for each party filed their suggested findings, conclusions, and memorandums in a timely manner, and this court has reviewed the same. This court finds that plaintiff was terminated in violation of the Whistleblower Law and is entitled to relief available under the statute.

## PRELIMINARY DISCUSSION

PRWA is a non-profit association of approximately 800 small water and waste water systems. The association provides mutual support for these smaller systems to assist in their operations. N.T. 12/02/2004 at 3. Funding for PRWA is obtained through Commonwealth and federal grants making it a "public body" under the law. *Id.* at 4. See 43 P.S. §1422. At all relevant times to the present action, defendant was, and continues to be, the executive director of PRWA. Above defendant in the chain of command was the board of directors for the association. As executive director of PRWA, defendant is responsible for general management of PRWA, including hiring and firing employees and establishing internal office polices and operating procedures. One of defendant's policies as understood by his staff is a strict chain of command when problems and issues arise. All problems were to be presented directly to defendant and under no circumstances was anyone to go above his head to seek resolution for an issue. It was also understood by his staff that

a breach of this policy would result in disciplinary action up to and including termination of employment.

Plaintiff was hired by defendant to work for PRWA on December 27, 2000. Her initial position was that of assistant to the chief financial officer, but she was promoted to the position of controller after the chief financial officer left the organization. As controller, plaintiff was responsible for the financial reporting, payroll, and invoicing for Department of Environmental Protection (DEP) programs, as well as contract review and budgeting. *Id.* at 82. During her course of employment as controller, plaintiff began to grow concerned over some of the financial operations of the association. For example, plaintiff had concerns that financial statements were overstating PRWA's income. Plaintiff also began to suspect inappropriate expenses were being charged to federal and Commonwealth grants, such as overtime compensation, which was prohibited by the regulations governing use of the grant money. Plaintiff also noted large expenses were not being competitively bid and asset purchases were being expensed rather than capitalized, thus overcharging the grants. Plaintiff grew concerned that charges were being placed on the association's credit card for which she did not have receipts and that the association's van was being excessively used for personal use. *Id.* at 83-86.

Plaintiff initially took her concerns to defendant, but defendant did not appear to be too concerned about these issues. Having received no satisfactory answer from her immediate supervisor, plaintiff took her concerns to the auditors whose report was ultimately viewed by the board, and she expressed her concerns to several board members. *Id.* at 87-89. PRWA's finances were ultimately discussed at a board meeting held June 13, 2002. Fol-

lowing the meeting, plaintiff noted a marked change in defendant's attitude toward her. It seemed as if he embarked on a crusade of sorts to either gain her unconditional support for him in his position as executive director of PRWA or, alternatively, her resignation. Plaintiff's employment was ultimately terminated on September 4, 2002. *Id.* at 93-109.

## DISCUSSION

Plaintiff asserts her termination of employment was unlawful as it was in violation of the Whistleblower Law, which prohibits an employer from discharging, threatening, discriminating, or retaliating against an employee "regarding the employee's compensation, terms, conditions, location or privileges of employment because the employee or a person acting on behalf of the employee makes a good faith report or is about to report, verbally or in writing, to the employer or appropriate authority an instance of wrongdoing or waste." 43 P.S. §1423(a). A "good faith report" is "a report of conduct defined . . . as wrongdoing or waste which is made without malice or consideration of personal benefit and which the person making the report has reasonable cause to believe is true." 43 P.S. §1422. "Waste" is defined under the law as "an employer's conduct or omissions which result in substantial abuse, misuse, destruction or loss of funds or resources belonging to or derived from Commonwealth or political subdivision sources." *Id.* "Wrongdoing" is defined as "a violation which is not of a merely technical or minimal nature of a federal or state statute or regulation, of a political subdivision ordinance or regulation or of a code of conduct or ethics designed to protect the interest of the public or the employer." *Id.*

In order to support a claim under the statute, "an employee alleging a violation of this Act must show by a preponderance of the evidence that, prior to alleged reprisal, the employee . . . had reported or was about to report in good faith, verbally or in writing, an instance of wrongdoing or waste to the employer or an appropriate authority." 43 P.S. §1424(b). The wrongdoing or waste alleged must be "of the type that the employer is charged to enforce for the good of the public or is one dealing with the internal administration of the governmental employer in question." *Gray v. Hafer,* 168 Pa. Commw. 613, 618-19, 651 A.2d 221, 224 (1994). An "appropriate authority" is "a federal, state or local government body, agency or organization having jurisdiction over . . . regulatory violations, professional conduct or ethics, or waste; or a member, officer, agent, representative or supervisory employee of the body, agency or organization." 42 P.S. §1422. In other words, a plaintiff must establish a connection or nexus between the employer's performance of its duty and the subject of the investigation. *Sea v. Seif,* 831 A.2d 1288 (Pa. Commw. 2003).

Plaintiff alleges that while she was in the position of controller she became concerned over some of the financial practices of the association. She first took those concerns to defendant, her supervisor, but received little response to her concerns other than "do not worry." When her concerns were not addressed by defendant, she took her concerns to the auditors and several members of the board, resulting in those concerns being addressed at the June 13, 2002 meeting. After that meeting where the concerns expressed by plaintiff were addressed, she noted a change in defendant's behavior toward her as he grew more adamant that she understand the importance of her

supporting him in his position and began to insinuate that her continued employment at PRWA hinged on her support.

This court must first determine whether plaintiff met her evidentiary burden under the law, namely a nexus between her reporting her concerns and termination of employment. This court finds that she has satisfied her burden. This court additionally finds that the board members constitute an appropriate authority as they are in a supervisory capacity over PRWA.

Defendant, as director of PRWA, was responsible for overseeing all the internal operations of PRWA. The proverbial buck stopped at his desk. Plaintiff, as controller, knew the regulations that needed to be followed in order to properly use the grant monies and had valid questions over whether policies sanctioned by defendant complied with grant regulations. Any mishandling of grant monies would most certainly qualify as wrongdoing or waste under the statutory definitions contained within the Whistleblower Law. See 25 P.S. §1422. As such, when plaintiff began to grow concerned that the financial practices permitted by defendant in his capacity as director might be in violation of the regulations governing the use of grant monies, she first went to defendant with her concerns. He disregarded her concerns and told her not to worry. Plaintiff continued to worry and justifiably took her concerns to the next level in the chain of command. Her termination a few months following a board meeting regarding the finances of the association only appears to prove plaintiff's claim that she was terminated because she went above defendant's head and took her concerns to the board.

Defendant, however, argues that plaintiff has not met her burden. Assuming the concerns about which plaintiff spoke to the board fell within the scope of defendant's duties as director, defendant argues plaintiff cannot establish her termination was the result of any allegations she made to the board. In support of this proposition, defendant points out that plaintiff formally accused defendant of wrongdoing and waste in a letter to several board members that was written on July 24, 2002, but was not mailed until September 4, 2002. As plaintiff was not terminated until September 4, 2002, defendant claims he did not know she made any accusations until after her employment was terminated.

This court finds defendant's assertion incredible, given the sequence of events. Plaintiff approached defendant with some concerns over the financial administration of PRWA. He told her not to worry and that he was not concerned. This response did little to assuage her concerns as the one responsible for the financial operations of PRWA. She then expressed her concerns to the auditors. Defendant knew she would be speaking with the auditors as it was part of her job, and the auditors would, in turn, report to the board. Logically, anything plaintiff told the auditors would be relayed to the board. Following the audit, the concerns plaintiff initially expressed to defendant were the subject of a board meeting. For defendant to claim he had no idea that plaintiff took her concerns about possible wrongdoing or waste to the board prior to learning about her letter simply does not make sense.

Even assuming defendant was aware plaintiff took her concerns over his head, defendant asserts that his termination of plaintiff does not violate the Whistleblower Law

because she was not terminated for reporting to the board. Indeed, the law does provide a defense "if the defendant proves by a preponderance of the evidence that the action by the employer occurred for separate and legitimate reasons, which are not merely pretextual." 43 P.S. §1424(c). Specifically, defendant claims that plaintiff was a difficult employee who was ultimately terminated for repeated acts of insubordination. Defendant does acknowledge that he had multiple conversations with plaintiff concerning her ongoing lack of support for him and how critical the support of his employees was to the effective operation of PRWA. N.T. 12/02/2004 pp. 19-20. Defendant also testified to an incident of immature behavior on the part of plaintiff when she refused to speak to him following an incident where another employee indicated to plaintiff that defendant was going to fire her, and, upon learning about the statement, defendant questioned this employee through her supervisor. *Id.* at 48-49. Defendant also testified about another incident when plaintiff attempted to get his approval for a work-sharing arrangement with another employee so that plaintiff could take care of a litter of puppies. *Id.* at 49. Defendant also pointed to the fact that he could not effectively conduct meetings with plaintiff because she insisted on having a third party present. Her insistence on this point, he argues, severely curtailed his ability to effectively manage PRWA. Brief for defendant at 11. Defendant concludes that plaintiff's behavior as evidenced by these incidents indicated a major personality conflict that could neither be tolerated nor remedied. The only solution left to defendant was to fire plaintiff.

In light of the evidence presented by plaintiff through former PRWA employees, this court finds the testimony

of defendant that plaintiff was terminated because she was an employee who was difficult, if not impossible, to work with merely a pretext. Testimony provided by Todd Mace and Wendy Malehorn indicated that defendant's need to ensure he had his employees' unconditional support in all aspects of his managing PRWA was paramount. This court found the testimony of Ms. Malehorn particularly interesting in that she was reprimanded by defendant for essentially the same conduct as plaintiff. Ms. Malehorn testified that she needed to know how to account for charges against a particular grant. Ms. Malehorn asked for assistance but received nothing from defendant or anyone else. Rather than be unproductive, she sought out an answer from National Rural Water. Upon learning that she had gone over his head after he refused to assist her, defendant informed Ms. Malehorn that she was fired and that, if she wanted to continue to work at PRWA, she needed to come in and try to regain her job. *Id.* at 73. This court cannot help but note the similarities between Ms. Malehorn's experiences in dealing with defendant and the accounting practices of PRWA and plaintiff's. Both Ms. Malehorn and plaintiff had questions, and both sought assistance from within the PRWA structure, but were unsuccessful in obtaining answers that satisfactorily answered their questions. They both went over defendant's head for assistance and were reprimanded. Additionally, Mr. Mace explained to this court that the internal policy enforced by defendant, that any complaints that did not go directly to him would result in the termination of one's employment, was generally understood by all employees. *Id.* at 61.

This court certainly recognizes the need for employers to have the support of his/her employees. An organi-

zation such as PRWA would be impossible to run if there were not some form of management and oversight, and the court also recognizes effective management cannot be obtained without a definitive chain of command. A chain of command, however, is only as good as each individual link. If there is one weak link, the chain will falter, and that appears to be the situation here. Plaintiff attempted to stay within the chain of command and take her concerns to defendant first, but he did not appear willing to work with plaintiff to satisfactorily address her concerns. On the contrary, with regard to employee concerns that questioned defendant's managerial policies, defendant opted for a more Machiavellian approach to management where a simple question as to his internal policies met with an almost immediate reprisal. One cannot expect to dismiss employee concerns with a mere "do not worry" and not expect that sooner or later a proactive employee intent on doing his/her job will not seek out a more definitive answer or resolution elsewhere.

Defendant notes that ultimately the auditors did not make any finding of wrongdoing or waste. Brief for defendant at 10. Unfortunately for defendant, it is not the fact that no finding was discovered. The Whistleblower Law is not a mechanism to punish employers for retaliating against employees; instead it is "chiefly a remedial measure intended to 'enhance openness in government and compel the government's compliance with the law by protecting those who inform authorities of wrongdoing.' " *O'Rourke v. Commonwealth, Department of Corrections,* 566 Pa. 161, 175, 778 A.2d 1194, 1202 (2001). (citations omitted) A policy where employees were not

permitted, under any circumstances, to go above defendant's head when they had concerns or questions but did not receive adequate answers to address their concerns or questions does anything but promote openness and compel compliance; in fact, it achieves just the opposite goal by ensuring that any suspected wrongdoing or waste will never be addressed, and compliance will never be achieved or enforced.

Having determined that defendant's reasons for terminating plaintiff were pretextual, this court must find in favor of plaintiff that her termination was due to her expressing her concerns to the board of directors as to the financial operations of the association in violation of the Whistleblower Law. Under the law, a successful plaintiff may seek damages for wrongful termination. Plaintiff requests damages in excess of $100,000 for lost wages, lost 401K contribution, health insurance, the wrongful withdrawal of the 401K, and attorney's fees. As defendant has not chosen to dispute these amounts, this court will accept the damage calculations as to damages, and awards plaintiff damages in the amount of $100,791.61.

The court enters the following order.

## ORDER

And now, August 17, 2005, after trial and a review of the suggested findings of fact, conclusions of law, and memorandums of law submitted by counsel, this court hereby finds in favor of plaintiff.

Defendant shall pay to plaintiff the sum of $100,791.61 in damages within 90 days of the date of this order.