**[J-49-2022]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

**BAER, C.J., TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, BROBSON, JJ.**

| | | |
|---|---|---|
| DONNA DAVIS JAVITZ, | : | No. 85 MAP 2021 |
| | : | |
| Appellant | : | Appeal from the Order of the |
| | : | Commonwealth Court at No. 115 CD |
| | : | 2020 dated July 19, 2021 Affirming |
| v. | : | the order of the Luzerne County |
| | : | Court of Common Pleas, Civil |
| | : | Division, at No. 2783 of 2019 dated |
| LUZERNE COUNTY, ROBERT LAWTON, | : | December 18, 2019 |
| AND DAVID PARSNIK, | : | |
| | : | ARGUED:  September 14, 2022 |
| Appellees | : | |

## <u>OPINION</u>

**JUSTICE DONOHUE**                                        **DECIDED:  May 5, 2023**

In this discretionary appeal, we consider the standard that a plaintiff must meet in order to establish a prima facie claim under Pennsylvania's Whistleblower Law[1] and whether the Commonwealth Court erred in its application of that standard.  As explained in this opinion, we conclude that the Commonwealth Court did so err.  We therefore vacate its order and remand for further proceedings.

## I. Background

On August 4, 2014, Appellant Donna Davis Javitz ("Javitz") became the Director of Human Resources for Luzerne County.  In that role, Javitz negotiated contracts,

---

[1]  43 P.S. §§ 1421-1428.

handled employee complaints, conducted *Loudermill* hearings,[2] and addressed union-related matters on behalf of Luzerne County. Her union-related responsibilities included participating in investigatory meetings for disciplinary matters involving union employees. In March 2015, the American Federation of State, County and Municipal Employees (hereinafter "AFSCME" or "Union") filed an unfair labor practice charge ("ULP Charge") with the Pennsylvania Labor Relations Board against Luzerne County, raising allegations concerning Javitz's conduct in two investigatory meetings. Paula Schnelly, an administrative assistant in the appellate division of the Luzerne County's District Attorney's Office and Union president, attended the investigatory meetings referenced in the ULP Charge as a representative for the Union members. As is common, attached to the ULP Charge were documents in support of the allegations. Among these documents were what appeared to Javitz to be transcripts of the investigatory meetings at issue. The highly detailed nature of the documents, as well as Javitz's recollection that Schnelly did not take notes during investigatory meetings, gave rise to a suspicion on Javitz's part that Schnelly recorded the investigatory meeting in violation of the Wiretap Act.

Shortly thereafter, on or about March 20, 2015, Javitz took her concern to the Director of Administrative Services, David Parsnik. Together they took the matter to the Luzerne County District Attorney. The District Attorney stated that she would refer the matter to the Attorney General's Office to investigate, as Schnelly's employment in the District Attorney's office created a conflict of interest. At various times over the following months, Javitz inquired of Parsnik, County Solicitor David Pedri, Esquire, and the District

---

[2] A pre-termination hearing for public employees required to satisfy due process rights. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985).

Attorney about the status of the investigation into the alleged Wiretap Act violation, but received no response. Instead, Javitz contends, she learned that the County Manager, Robert Lawton, instructed the District Attorney to drop the matter. On October 15, 2015, the Union and County settled the ULP Charge. On October 26, 2015, Javitz was terminated from her position.

In December 2015, Javitz filed an action in federal district court, naming Luzerne County, Lawton, and Parsnik as defendants (collectively, "Appellees"). Her complaint raised federal and state claims, including a claim under Section 3(a) of the Whistleblower Law, which provides the following:

> **(a) Persons not to be discharged**.--No employer may discharge, threaten or otherwise discriminate or retaliate against an employee regarding the employee's compensation, terms, conditions, location or privileges of employment because the employee or a person acting on behalf of the employee makes a good faith report or is about to report, verbally or in writing, to the employer or appropriate authority an instance of wrongdoing or waste by a public body or an instance of waste by any other employer as defined in this act.

43 P.S. § 1423(a).[3] In connection with the Whistleblower Law claim, Javitz alleged that after reporting what she believed to be illegal recording of investigatory meetings by Schnelly, Parsnik stopped including her in discussions pertinent to her responsibilities and instead went directly to her subordinates; he was disrespectful to her in front of her staff; he removed her from talks with human resource consultants and vendors; her key to a filing room that contained the personnel files was taken from her; she was no longer

---

[3] The remaining state law claims alleged breach of contract for violation of the County's Personnel Code, Home Rule Charter, and Ethics Code, and a common law claim for wrongful termination. The federal claims alleged violations of Javitz's Fourteenth and First Amendment rights.

permitted to lead contract negotiations; she was told, for the first time, to do the filing for her office; she was excluded from meetings; and she was excluded from participating in talks about the budget for the human resources department. *Javitz v. Luzerne Cnty.*, No. 3:15-CV-2443, 2017 WL 1217178 at *8 (M.D. Pa. Mar. 31, 2017). She also alleged that Lawson instructed the District Attorney not to pursue the investigation and that Parsnik ignored her attempts to discuss the investigation after the initial meeting in the District Attorney's office. *Id.* at *11. Appellees sought dismissal of all of Javitz's claims. The district court agreed in part. It refused to dismiss the First Amendment retaliation and Whistleblower Law claims, finding, inter alia, that these allegations sufficiently pled a causal connection between her report of the alleged Wiretap Act violation and her termination. *Id.*

Subsequently, the parties filed competing motions for summary judgment. The district court denied Javitz's motion in its entirety, but granted Appellee's motion as to the remaining federal claims. Although Javitz's state law claims remained viable, the district court declined to exercise supplemental jurisdiction over them, and subsequently they were transferred to the Luzerne County Court of Common Pleas.[4] *See Javitz v. Luzerne Cnty.*, No. 3:15-CV-2443, 2018 WL 1545589 (M.D. Pa. Mar. 29, 2018).

In March 2019, Appellees moved for summary judgment as to all of Javitz's claims. As to the whistleblower claim, Appellees argued that they were entitled to summary judgment because Javitz failed to establish that Schnelly was acting as a county employee when the alleged recordings occurred and further, that Javitz was fired for poor

---

[4] Javitz sought to have her claims heard in Lackawanna County, but Appellees successfully moved to have the case transferred to Luzerne County, where the Honorable Kenneth W. Seamans was specially assigned to hear the matter. Javitz's Brief at 6-7.

performance. To refute Javitz's particularized claims of retaliatory behavior and termination, Appellees proffered the depositions of various human resources department employees to establish that the entire human resources department (not just Javitz) was relocated from the County Courthouse and that Javitz knew this move was going to happen when she interviewed for her position. They relied on emails to refute Javitz's claims that she was cut off from budgetary meetings, union meetings, and contract negotiations. In support of their defense that Javitz was terminated for poor performance, Appellees pointed to the ULP Charge (which it settled) as evidence of Javitz's poor handling of union matters. Appellees also produced emails showing that Javitz failed to fill a particular position that Parsnik instructed her to fill. In response, Javitz relied on deposition testimony from the District Attorney, in which she confirmed that she referred Javitz's Wiretap Act allegation to the Attorney General because of the conflict caused by Schnelly's employment in the District Attorney's office, as well as Javitz's own affidavit, in which she swore that she had no prior discipline before her termination and that she was not given a warning nor a chance to improve before being terminated.

The trial court granted Appellees' motion and dismissed the complaint with prejudice. Relevant to this appeal, it found that Javitz failed to set forth a prima facie case under the Whistleblower Law on two grounds. It first found that Javitz failed to establish wrongdoing by a public body because it was "undisputed from the record" that Schnelly was acting in her union capacity and not as a county employee when she was alleged to have committed the alleged Wiretap Act violation. Trial Court Opinion, 3/10/2020, at 7-9. Further, of relevance to this appeal, it found that Javitz failed to establish a causal connection between her report of wrongdoing and her termination. *Id.* at 9-10. In its view,

Javitz's evidence constituted no more than her perception of how she was treated after making the report, which was insufficient to meet her burden. *Id.* at 10-11.

Javitz appealed to the Commonwealth Court, where she challenged both of these determinations.[5]  The Commonwealth Court recognized that to establish a prima facie claim under the Whistleblower Law, a plaintiff must establish "(1) a protected report of wrongdoing, (2) by a public body, and (3) a causal connection between the report and her termination." *Javitz v. Luzerne Cnty.*, 115 C.D. 2020, 2021 WL 3028160, at *6 (Pa. Commw.  July 19, 2021) (unpublished disposition), *appeal granted*, 267 A.3d 482 (Pa. 2021).  Concerning a causal connection, Javitz argued that the parties' competing evidence as to the reasons for her termination established an issue of material fact, thereby precluding the entry of summary judgment. *Id.*  Appellees took a different view, arguing that Javitz's evidence was insufficient to establish a causal connection, and therefore, that Javitz failed to meet her burden to establish a prima facie case, entitling them to judgment as a matter of law. *Id.* at *7.

The Commonwealth Court agreed with Appellees.  The court specified that the requisite causal connection must be shown by "concrete facts or surrounding circumstances that the report of wrongdoing or waste led to plaintiff's dismissal, **such that** there was specific direction or information received not to file the report or that there would be no adverse consequences because the report was filed." *Id.* (emphasis added)

___

[5]  Because the Commonwealth Court found that Javitz failed to establish the requisite causal connection, it limited its discussion to that aspect of the trial court's decision and did not reach the issue of Schnelly's county employment.

(misquoting *Golaschevsky v. Dep't of Env't Prot.*, 720 A.2d 757, 759 (Pa. 1998)).[6] The intermediate court warned that vague and inconclusive circumstantial evidence will not suffice to establish a causal connection and that the mere fact that negative actions by an employer or termination occur after a report is made will not satisfy the plaintiff's burden. *Id.* (quoting *Evans v. Thomas Jefferson Univ.*, 81 A.3d 1062, 1070 (Pa. Commw. 2013)).

Turning to the record, the Commonwealth Court found itself "constrained to agree" that the record was bereft of facts establishing that Javitz was terminated because of her report of alleged illegal recording by Schnelly. *Id.* It explained that Javitz

> has not provided "concrete facts" or shown any "surrounding circumstances" that could lead to the conclusion that there was "a specific direction" that she would suffer retaliation or be terminated because of the report as required by precedent. *Golaschevsky*, 720 A.2d at 761. Nor is there any evidence or allegation that she was directed to not make the report; in fact, [Javitz] provided evidence that Parsnik, her supervisor[,] joined her when she made her report to the District Attorney. Instead, the evidence [Javitz] points to – the positive performance evaluations she had received prior to the report, the moving of her office from the County Courthouse, her alleged restriction in involvement in union meetings and contract negotiations, the alleged changes in delegation of responsibilities, what [she] perceived as rude behavior by her supervisors, and her ultimate termination – are nearly identical to the claimed retaliatory actions alleged by the employees in *Golaschevsky* and *Evans*, which were determined to be insufficient to establish a prima facie case on causation. Thus, under Supreme Court and our [c]ourt's precedent, these perceived retaliatory acts amount only to

---

[6] The Commonwealth Court misquoted *Golaschevsky* in that it omitted an "as" from the sentence it purported to reproduce. The language used in *Golaschevsky* provides that a causal connection must be established by "concrete facts or surrounding circumstances that the report of wrongdoing or waste led to plaintiff's dismissal, **such as that** there was specific direction or information received not to file the report or that there would be no adverse consequences because the report was filed." *Golaschevsky v. Dep't of Env't Prot.*, 720 A.2d 757, 759 (Pa. 1998) (emphasis added).

> Appellant's subjective perception that these actions resulted from her report of alleged wrongdoing and do not rise to the sort of concrete facts required to show causation under the Whistleblower Law.

*Id.* Finding itself bound by the case law, the Commonwealth Court concluded that Javitz failed to satisfy the burden required to set forth a prima facie whistleblower claim. *Id.* at *8.

The Honorable Patricia A. McCullough dissented. Stressing that for purposes of summary judgment, the evidence must be viewed in the light most favorable to Javitz as the non-moving party, she concluded that Javitz put forth sufficient evidence to establish a causal connection between her report and subsequent termination. *Id.* at *11 (McCullough, J., dissenting). In particular, the dissent pointed to evidence establishing that after Javitz participated in two investigatory meetings involving Union members she was given a good faith basis to believe that the Union's president illegally recorded those meetings. *Id.* Javitz reported this suspected wrongdoing to Parsnik, who agreed that there may have been illegal recording and joined Javitz to report the misconduct to the District Attorney. County Manager Lawton intervened and instructed the District Attorney to cease the investigation. *Id.* When Javitz inquired of Parsnik, Lawton or the District Attorney about the status of the investigation, they all "effectively shunned" her inquiries. *Id.* It was around this time that Javitz began to experience "retaliatory employment actions in an apparent attempt to 'squeeze' her out." *Id.* Months later, Javitz was fired when she refused to resign, and was not given reasons for her firing. *Id.* The dissent distinguished *Golaschevsky* on the basis that the employer there submitted performance evaluations to prove that the termination was due to poor job performance rather than the report of wrongdoing, whereas here Appellees did not submit evidence of historically

unsatisfactory job performance. *Id.* The dissent further noted that in the federal action, the district court denied Appellees' motion to dismiss, having found that the corresponding factual averments in Javitz's amended complaint adequately pled a causal connection between the report and termination. *Id.* at *12-*13. The dissent also observed that in neither *Golaschevsky* nor the later case of *O'Rourke v. Commonwealth*, 778 A.2d 1194 (Pa. 2001), did this Court require that to establish causation, a plaintiff must prove either that the employer made a direct threat of adverse employment action or specifically directed the plaintiff not to make a report. *Id.* at *14. In the dissent's view, a finding of causation may be based on the totality of the circumstances, and applying that standard here, it found that Javitz satisfied her burden. *Id.*

Javitz petitioned this Court for review of the Commonwealth Court's determination, which we granted. *See Javitz v. Luzerne Cnty.*, 267 A.3d 482 (Pa. 2021) (per curiam).[7]

---

[7] We granted review of two issues, as phrased by Javitz:

> 1. Whether this Court should allow this appeal to proceed where the Commonwealth Court in this case has rejected the well-established holding of the Supreme Court in *O'Rourke* [] and *Golaschevsky* [] and instead determined that in order to establish a prima facie case under the Whistleblower Law litigant must establish causation with direct evidence proving (1) the County directly threatened [Javitz] with adverse employment action for filing a report or (2) specifically directed [Javitz] not to file the report, in effect nullifying the Whistleblower Law?
>
> 2. Did the Commonwealth Court err in entering an order dismissing this appeal by limiting its findings of facts and misapplying the law established by the Supreme Court?

*Javitz v. Luzerne Cnty.*, 267 A.3d 482 (Pa. 2021) (per curiam). Under the heading of the second issue in her brief, Javitz asks this Court to reinstate her Ethics Code claim. Satisfied that the record supports a finding of causation for the Whistleblower Law claim, she reasons that she must have established a prima facie case under the Ethics Code (continued…)

## II. Parties' Arguments

Javitz contends that the court below misapplied the applicable causation standard in assessing the evidence that she offered to establish a prima facie case by requiring that she establish, through direct evidence, either that she was instructed not to report the alleged wrongdoing by Schnelly or that she was threatened with adverse employment consequences for making the report. The thrust of her argument is that the Commonwealth Court impermissibly narrowed the causation standard established in *Golaschevsky* and reiterated in *O'Rourke* by requiring direct proof of an explicit threat of retaliation or explicit instruction not to file a report of wrongdoing. Javitz attributes this misapplication of the law to the Commonwealth Court's erroneous recitation of the standard set forth in *Golaschevsky*, substituting the phrase "such that" for "such as that," and as a result, turning what this Court offered as examples of conduct that would support a causation nexus into requirements. Javitz's Brief at 38. She contends that the Commonwealth Court's decision has changed the standard so as to preclude Whistleblower Law claims absent a proverbial smoking gun. *Id.* at 35-36. Javitz argues that the Commonwealth Court's decision has altered the landscape such that "unless a threat of termination is spoken, we cannot assume that a firing without anything less than a concurrent threat was caused by the report of wrongdoing. Anything less is a perception problem." *Id.* at 36. In Javitz's view, not only is this a corruption of the *Golaschevsky*

---

because its whistleblower provision is broader than the Whistleblower Law, as it applies to any wrongdoing, and Javitz has alleged sufficient facts to establish that Schnelly committed a crime. Javitz's Brief at 52. She also asks that if the Court were to find that she lacks a statutory remedy, we reinstate her common law wrongful discharge claim. *Id.* at 53-54. Both of these requests are beyond the scope of the issues upon which this Court granted discretionary review.

standard, but it runs contrary to the remedial purposes of the Whistleblower Law. *Id.* at 36-37.

Perhaps in recognition of the *Golaschevsky* Court's rejection of the employee's "perceptions of how others treated him" as a basis for a causal connection, Javitz further contends that the Commonwealth Court "selectively chose certain facts and ignored others" when undertaking its review of the record. *Id.* at 33. In particular, she draws our attention to her evidence that after she reported the alleged Wiretap Act violation, Parsnik excluded her from aspects of her job that she previously performed and spoke directly to her subordinates; eliminated her from discussions and meetings with human resource vendors and consultants; revoked her access to critical files and documents; was disrespectful to her in front of her own staff; and denied her input on discussions regarding the budget for the human relations department. *Id.* at 33 n.16. She emphasizes that she had no negative performance reviews before she was terminated, and further that Lawton referred to her as an outstanding employee in a newspaper article prior to the report. *Id.* She further faults the Commonwealth Court for failing to appreciate that she made multiple attempts to follow up on her report, all of which were ignored by her superiors. *Id.* at 34-36.[8] Javitz argues that this selective review impermissibly narrowed the circumstances under which a claimant can seek protection under the Whistleblower Law. *Id.* at 33.

Appellees do not address whether the Commonwealth Court misconstrued the law by requiring proof that Javitz was explicitly told not to make the report or received a threat

---

[8] Javitz also argues that, for the same reasons cited by the Commonwealth Court dissent, her case is distinguishable from *Golaschevsky*. Javitz's Brief at 38-46.

of adverse employment action.[9]  Rather, they address the remaining elements of Javitz's Whistleblower Law claim in an effort to prove that she has failed to substantiate her allegations, such that they are entitled to judgment as a matter of law.  In that vein, they contend that Javitz has failed to put forth any evidence to establish a genuine issue of material fact as to an instance of wrongdoing or that the alleged wrongdoing was committed by an entity subject to the Whistleblower Law.  *Id.* at 17-19.

Appellees respond to Javitz's evidentiary claim with their own review of the evidence to prove that Javitz has "failed to establish causation through her alleged instances of antagonism and retaliation."  Appellees' Brief at 12.  They point to Javitz's admission that she knew when she was hired that her offices would be relocated, documents showing that Parsnik continued to communicate with Javitz after March 2015, and correspondence showing that Javitz continued to participate in union matters generally, and AFSCME matters specifically, after she made the report.  *Id.* at 13-15.  Appellees also reference email correspondence and other documentation to counter Javitz's claim that her job responsibilities were diminished or that she was excluded from union matters and contract negotiations.  *Id.*

### III.    Analysis

We are called on to review the Commonwealth Court's conclusion that Javitz failed to establish the causal connection element of her whistleblower claim because she did not put forth direct evidence that she was instructed not to make a report of wrongdoing or threatened with adverse employment action for making such a report.  *Javitz*, 267 A.3d

---

[9]  Absent from their discussion is any citation to, much less discussion of, *Golaschevsky* or *O'Rourke*.

482.  This is a question of law, over which our scope of review is plenary.  *Moorhead v. Crozer Chester Med. Ctr.,* 765 A.2d 786, 788 (Pa. 2001) (invoking plenary scope of review in connection with question of whether lower courts properly interpreted case law).

### *The Whistleblower Law & the Golaschevsky Standard*

The Whistleblower Law is "chiefly a remedial measure" that aims to promote openness in governmental operations and governmental compliance with the law. *O'Rourke*, 778 A.2d at 1202.  It achieves these goals by protecting employees from adverse employer action following a report of actual or suspected violation of federal, state or local law; protecting employees who participate in hearings, investigations, or court proceedings regarding employer misconduct; and providing remedies for employees and penalties against employers for actions that violate its terms.  *Bailets v. Pa. Tpk. Comm'n*, 123 A.3d 300, 307 (Pa. 2015); *see also* 43 P.S. § 1421, Historical and Statutory Notes ("An Act providing protection for employees who report a violation or suspected violation of State, local or Federal law; providing protection for employees who participate in hearings, investigations, legislative inquiries or court actions; and prescribing remedies and penalties.").  The protective measure for employees who report wrongdoing is found in Section 3(a), which provides the following:

> **(a) Persons not to be discharged.**--No employer may discharge, threaten or otherwise discriminate or retaliate against an employee regarding the employee's compensation, terms, conditions, location or privileges of employment because the employee or a person acting on behalf of the employee makes a good faith report or is about to report, verbally or in writing, to the employer or appropriate authority an instance of wrongdoing or waste by a public body or an instance of waste by any other employer as defined in this act.

43 P.S. § 1423(a). Section 4 of the Whistleblower Law provides a cause of action, allowing that "[a] person who alleges a violation of this act may bring a civil action in a court of competent jurisdiction for appropriate injunctive relief or damages, or both, within 180 days after the occurrence of the alleged violation." *Id.* § 1424(a). To establish a prima facie case of a violation of Section 3(a), an employee must establish "by a preponderance of the evidence that, prior to the alleged reprisal, the employee or a person acting on behalf of the employee had reported or was about to report in good faith, verbally or in writing, an instance of wrongdoing or waste to the employer or an appropriate authority." *Id.* § 1424(b). In the case of alleged retaliatory termination, the employee must show a causal connection between the report of wrongdoing and the termination. *Bailets*, 123 A.3d at 306.[10]

The causation requirement was first articulated in *Gray v. Hafer*, 651 A.2d 221 (Pa. Commw. 1994), *aff'd per curiam*, 669 A.2d 335 (Pa. 1995). The plaintiff therein was employed by the Department of the Auditor General from May 1991 to September 1993, during which time he was assigned to the Office of Special Investigations. In his position with the Office of Special Investigations, the plaintiff investigated a variety of fraudulent activity, including the misuse of public funds by Commonwealth agencies or illegal acts involving institutions that receive state funds. *Id.* at 223. In the course of his duties, the

---

[10] Once the employee has established a prima facie case, the burden shifts to the employer to prove, by a preponderance of the evidence, that the complained-of actions were made for "separate and legitimate" reasons. 43 P.S. § 1424(c); *O'Rourke*, 778 A.2d at 1203-04. If the employer satisfies this burden, the burden shifts back to the employee to prove that the reasons offered are merely pretextual. *Watson v. City of Phila.*, 683 A.2d 489, 492 (Pa. Commw. 1994). As discussed later in this opinion, this burden-shifting framework is consistent with other statutes that protect employees from retaliation by employers.

plaintiff filed a report with the Auditor General detailing instances of waste and wrongdoing by the Center for Research and Human Development in Education ("Center"), which was located within Temple University. *Id.* The Auditor General took no action based on this report. Four months later, a Temple University representative contacted the Auditor General and requested access to the report about the Center. Within weeks of this request, the Auditor General confronted the plaintiff with a resignation letter and asked him to resign or face termination. The plaintiff signed the letter under duress.

Based on these facts, the plaintiff brought a claim in the Commonwealth Court's original jurisdiction under the Whistleblower Law. The only substantive allegation in the complaint was that the plaintiff (an investigator employed by the Auditor General) made a report to the Auditor General of criminal acts by the Center. The Auditor General demurred, arguing that the plaintiff failed to state a claim upon which relief could be granted. The Commonwealth Court granted the Auditor General's preliminary objection, finding that the plaintiff's lone allegation fell short of the threshold to plead a Whistleblower Law claim. The court recognized that the plaintiff elaborated on his sparse pleading in his brief by clarifying that after he made the report about the Center in May 1993, he received no response relative to it until a Center employee contacted the Auditor General, after which his resignation was demanded. As the court characterized it, the sum of the plaintiff's allegations were that "based on the timing of the request for a copy of the report and his termination, the Auditor General was guilty of violating the Whistleblower Law." *Id.* at 225.

The Commonwealth Court explained that it could not accept these "minimal" allegations as sufficient to establish an allegation of wrongdoing by the Auditor General;

otherwise, every public employee who performs investigatory functions and files a report upon which his department head does not act would automatically establish a prima facie Whistleblower Law claim if terminated. *Id.* Rather, the Commonwealth Court explained, at the pleading stage, such an employee must allege a connection between the report of waste or wrongdoing and the termination:

> To make out a cause of action under the Whistleblower Law by one who, as part of his or her regular job duties, files reports of waste or wrongdoing based on wrongdoing outside the governmental entity that he is charged with seeking out, that person must make more than a general statement that a report was filed and, within a given amount of time, the employee was fired as a result. An employee who has been terminated based on a filed report and wants to base his or her complaint on their employer's violation under the Whistleblower Law must specify how their employer is guilty of waste and/or wrongdoing. They must also show by concrete facts or surrounding circumstances that the report led to their dismissal, **such as that** there was specific direction or information they received not to file the report or there would be adverse consequences because the report was filed.

*Id.* (emphasis added).

Four years later, this Court adopted this causation standard. *Golaschevsky*, 720 A.2d at 759. *Golaschevsky* involved an employee hired by the Department of Environmental Resources ("DER") as a computer systems analyst. The employee was hired on September 7, 1993. On December 20, 1993, approximately three months into this position, the employee informed his supervisor that he believed that other employees in his division were using computer software in a manner that violated federal copyright laws. The supervisor encouraged the employee to report his suspicions. *Id.* at 757-58. A few weeks later, the employee received his first performance review, which detailed several areas of deficient performance, and he was given a list of projects to complete in

a designated timeframe. After that period lapsed, the employee was subject to another evaluation, at which time his performance was rated again as unsatisfactory. Ten days later, on April 25, 1994, DER terminated the employee.

The employee later filed a whistleblower claim, alleging that he was terminated in retaliation for his report of suspected copyright law violations by co-workers. Pertinent to the present appeal, the employee testified that prior to alerting his supervisor of the suspected copyright violations, he had never been told that his work was unsatisfactory and that the report instigated not only his first negative performance reviews, but also obstructive behavior by colleagues and supervisors that impeded his ability to complete his work and ultimately, his termination. *Id.* at 759-60.

Following the close of discovery, DER sought summary judgment, arguing that the employee failed to establish a prima facie cause of action. The Commonwealth Court granted the motion and the employee appealed to this Court, arguing, inter alia, that the Commonwealth Court's conclusion that he failed to establish a causal connection to support a Whistleblower Law claim was in error. *Id.* at 758. Quoting directly from *Gray*, this Court stated that to establish the causal connection for a claim of retaliatory termination under the Whistleblower Law, an employee "must show by concrete facts or surrounding circumstances that the report of wrongdoing … led to the [] dismissal, **such as that** there was specific direction or information received not to file the report or that there would be adverse consequences because the report was filed." *Id.* at 759 (internal quotations omitted) (emphasis added) (quoting *Gray,* 651 A.2d at 225).[11]

---

[11] Arguably, the standard announced in *Gray* was designed to address claims brought by a public employee whose job is to investigate public entities other than his employer. (continued…)

Based on this standard, the Court rejected the employee's evidence of a causal connection between the report and his termination:

> He does not allege that his supervisors threatened to fire him or to impose any other adverse consequences because of his report, nor does he establish any other "concrete facts" to connect the report with the dismissal. Instead, [a]ppellant relies solely on vague and inconclusive circumstantial evidence.

*Id.* After recounting the employee's evidence, the Court concluded:

> However, this "evidence" is nothing more than [a]ppellant's perception of how others treated him after he made the … report — a perception that is obviously colored by [a]ppellant's interest in proving that he is a victim of retaliatory discharge.
>
> * * *
>
> Appellant offers no concrete evidence tending to show a causal connection between his report of alleged copyright violations and his subsequent termination, and, therefore, he cannot establish a prima facie case of retaliatory discharge pursuant to the Whistleblower Law.

*Id.* at 760.[12]

While concurring in the result, Justice Nigro wrote separately to stress that absent direct evidence, a whistleblower claim may be established through circumstantial

---

As such, the employee must specify how the investigative-agency employer committed waste or wrongdoing by failing to take action on a report of wrongdoing by the outside public entity made by the employee. The example of causation cited in *Gray* appears to derive from the reporting responsibilities of the employee, i.e., he was told not to do his job. This Court did not note this factual distinction when adopting the examples of causation in *Golaschevsky*, a case involving a plaintiff who was not employed in a capacity that required the filing of investigatory reports. That said, the broad application of the examples of evidence that meet the standard has never been challenged, and it is not challenged here.

[12] Beyond rejecting the employee's evidence as insufficient, this Court found relevance in the fact that the employer encouraged the employee to follow up on his concern and submit a written report. *Golaschevsky*, 720 at 760.

evidence. *Id.* (Nigro, J., concurring).[13] In so doing, he recognized that the Whistleblower Law's shifting burden of proof is similar to those used in claims of unlawful discrimination brought under the Pennsylvania Human Relations Act ,43 P.S. §§ 951-963 ("PHRA"), and Title VII discrimination cases. *Id.* at 760 & n.3.

The concurrence agreed that to prove a causal connection, a whistleblower plaintiff must establish concrete facts or surrounding circumstances that a report led to dismissal. *Id.* at 761. Justice Nigro noted that in Title VII cases, the Third Circuit has accepted circumstantial evidence of a pattern of antagonism or retaliatory animus following the report as sufficient evidence to overcome a motion for summary judgment. *Id.* After performing a separate review of the evidence, which was based exclusively on the employee's deposition testimony reporting his view that his treatment in the workplace adversely changed after reporting the alleged illegal activity, including the negative performance evaluation, Justice Nigro concluded that it was insufficient to support a reasonable finding that the employer engaged in antagonistic behavior against the employee after his report of illegal activity, culminating in his termination. Without elaboration, Justice Nigro stated that "[w]hile in another case the circumstances may

---

[13] The majority opinion does not mandate direct evidence to establish the causal connection. First, the majority certainly was aware of the term of art and did not use it to describe the type of acceptable evidence. Instead, it used the phrase "concrete evidence" explaining that it must "tend[] to show a causal connection" between the report and subsequent termination. *Golaschevsky*, 720 A.2d at 760. Direct evidence is evidence that if true, proves a fact without inference. Evidence, BLACK'S LAW DICTIONARY (11th Ed. 2019). Thus, "concrete evidence" described by the Court as evidence "tending to show" refers to circumstantial evidence, which is evidence of a fact or set of facts from which the existence of the fact to be determined may reasonably be inferred. *D'Ardenne by D'Ardenne v. Strawbridge & Clothier, Inc.*, 712 A.2d 318, 320 (Pa. Super. 1998) (quoting W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 39, at 242 (5th ed. 1984)).

permit a jury to infer that a report of wrongdoing led to an employee's dismissal, such a factual scenario is not present here." *Id.* at 762.

Thus, in *Golaschevsky*, the Court held that a plaintiff's prima facie case for causation may be established by use of either "concrete facts or surrounding circumstances" but not by the employee's conclusory perception of how others treated him after making a report of alleged wrongdoing. *Id.* at 759-60.

When considered in the context of the evidence adduced by the employee, it is clear that the requirement for "concrete facts or surrounding circumstances" to establish a causal connection means that the whistleblower plaintiff cannot rely on his or her perception of the facts to support a conclusion that the employer engaged in antagonistic conduct after the report. Instead, the plaintiff must prove the concrete facts or surrounding circumstances[14] from which the factfinder can draw the inference that the employer's conduct was antagonistic.

For example, in *Golaschevsky*, the employee did not offer evidence of pre-report positive performance evaluations that were followed by post-report negative reviews, from which a jury could infer that the negative review was a result of the whistleblowing.[15] Likewise, there was no evidence of the type of input required from co-workers to complete

---

[14] As previously explained, this language originated in *Gray*, a case in the Commonwealth Court's original jurisdiction, involving a ruling on a preliminary objection in the nature of a demurrer. Given this procedural posture, the Commonwealth Court was focused on the sufficiency of the allegations in the complaint to establish a claim upon which relief could be granted – i.e., allegations establishing the elements of a Whistleblower Law claim. By referencing "concrete facts" and "surrounding circumstances," the court was directing that to plead a prima facie whistleblower claim, the plaintiff was required to plead the factual basis upon which the causal connection was based.

[15] Instead, the employee relied on the fact that he had not received a negative evaluation prior to reporting the alleged illegality.

his assignment, or other projects for which input was provided followed by the withholding of input by co-workers after the report. Instead, the employee testified only that his co-workers refused to cooperate with him. *Golaschevsky* stands for the proposition that a plaintiff cannot rely on self-serving conclusions of an antagonistic post-report workplace and subsequent discharge to establish a prima facie case of causation.[16]

This understanding of *Golaschevsky* is reinforced by the Commonwealth Court's treatment of the evidence of causation in *O'Rourke*. O'Rourke was a food service instructor in the culinary department of SCI-Dallas who, in the course of performing his job, discovered a scheme that involved the theft of thousands of pounds of meat from the culinary department and the fraudulent alteration of the culinary department's inventory books to disguise the theft. *O'Rourke*, 778 A.2d at 1196. O'Rourke reported this conduct to the deputy superintendent, and an investigation ensued. After making the report, O'Rouke's co-workers became hostile toward him, engaging in "petty acts of irritation and harassment," and his superiors reassigned him to a less desirable position in the dining

---

[16] Federal case law applying Pennsylvania's Whistleblower Law is in accord with this explanation of the *Golaschevsky* standard, as it reveals an understanding that factually unsupported conclusions about post-report antagonistic conduct by employers or retaliatory discharge are insufficient to establish a causal connection. *See, e.g., Bennett v. Republic Servs., Inc.*, 179 F. Supp. 3d 451, 456 (E.D. Pa. 2016) (explaining *Golaschevsky* as requiring facts or circumstances that support an inference tying report of wrongdoing to termination and finding insufficient plaintiff's sole, bald conclusory allegation that termination was made in retaliation for her report); *McAndrew v. Bucks Cnty. Bd. of Comm'rs*, 982 F.Supp.2d 491, 503 (E.D.Pa. 2013) ("In order to sustain a [Whistleblower Law] claim, plaintiff must plead facts or surrounding circumstances supporting the inference that the reports … led to her dismissal."); *Mosley v. City of Pittsburgh Pub. Sch. Dist.*, 702 F. Supp. 2d 561, 587 (W.D. Pa. 2010) (finding evidence inadequate to establish causal connection where "there [was] no evidence from which a reasonable jury could infer that [supervisor] decided to terminate [p]laintiff because of his report" where the only evidence offered was plaintiff's belief that supervisor began to "set the stage" for plaintiff's termination after plaintiff reported wrongdoing).

hall and removed him from a list of employees eligible to work as a supervisor. *Id.* at 1197. Having suffered these consequences, O'Rourke filed a whistleblower claim. The Commonwealth Court, in its original jurisdiction, found that the only actionable retaliatory acts pled by O'Rourke were the reassignment and removal from the supervisor list, having rejected the evidentiary worth of his perception that the employee suffered "petty acts of irritation and harassment." *Id.* at 1198. While the causal connection was ultimately admitted by O'Rourke's employer, on review this Court pertinently summarized *Golaschevsky* by stating that "[t]his Court has … held that a Whistleblower Law claimant must come forward with **some evidence** of a connection between the report of wrongdoing and the alleged retaliatory acts." *Id.* at 1200 (emphasis added) (citing *Golaschevsky*, 720 A.2d at 759).

### IV.    Application to the Present Case

Javitz is correct that when setting forth the standard, the Commonwealth Court misquoted *Golaschevsky*, rendering the original "such as that" into "such that." *Compare Golaschevsky*, 720 A.2d at 759 ( "[A] plaintiff must show by concrete facts or surrounding circumstances that the report … led to … dismissal, **such as that** there was specific direction or information received not to file the report or [that] there would be adverse consequences because the report was filed.") (emphasis added), *with Javitz*, 2021 WL 3028160, at *6 ("[T]he causal connection … must be shown "by concrete facts or surrounding circumstances that the report of wrongdoing or waste led to plaintiff's dismissal, **such that** there was specific direction or information received not to file the report or that there would be adverse consequences because the report was filed.") (emphasis added). Further, upon a complete reading of the Commonwealth Court's

decision, it appears that the court required direct evidence to satisfy Javitz's burden to establish a causal connection. In addition to finding that Javitz failed to provide evidence of a specific direction not to file the report or that she would be terminated for filing the report, the court addressed some of the evidence that she did put forth:

> [T]he evidence [Javitz] points to – the positive performance evaluations she had received prior to the report, the moving of her office from the County Courthouse, her alleged restriction in involvement in union meetings and contract negotiations, the alleged changes in delegation of responsibilities, what [she] perceived as rude behavior by her supervisors, and her ultimate termination – are nearly identical to the claimed retaliatory actions alleged by the employees in *Golaschevsky* and *Evans*,[17] which were

---

[17] Contrary to the Commonwealth Court's view, the evidence presented by the plaintiff in *Evans* was materially different from the evidence presented in *Golaschevsky*. As recounted above, the plaintiff in *Golaschevsky* attempted to establish a causal connection based on his first performance review, which occurred after he made his report and was negative, and his perception of how others treated him. *Golaschevsky*, 720 A.2d at 759-60. *Evans* involved a plaintiff nurse who made a report regarding conduct by the director of the hospital's addiction clinic, after which, the plaintiff alleged, she received multiple disciplinary warnings, was subjected to suspensions without pay, and ultimately terminated. *Evans v. Thomas Jefferson Hosp.*, 81 A.3d 1062, 1064-67 (Pa. Commw. 2013). While the plaintiff relied on her perception that co-workers and superiors treated her poorly after making her report, she did so only in part. The plaintiff also put forth evidence of positive performance reviews that turned negative after she made her report, as well as evidence that the warnings and suspensions occurred only after she made her report. *Id.* at 1070. This was evidence of concrete facts and surrounding circumstances from which an inference of causation could be drawn; evidence not presented in *Golaschevsky*.

The Commonwealth Court did not parse the evidence. It looked only at the similarity between some of the allegations made by the plaintiffs in both cases (the receipt of poor performance reviews and the plaintiffs' perception that others began to treat them differently) and concluded that pursuant to *Golaschevsky*, the evidence was insufficient to establish a causal connection. *See id.* at 1071 ("The evidence submitted by Evans is the very same type of evidence that the Supreme Court held insufficient in *Golaschevsky*."). The Commonwealth Court failed to consider the evidence offered in support of the employer's perception of mistreatment, and in so doing, reached a false equivalency and misapplied *Golaschevsky*'s holding. As discussed infra, the Commonwealth Court committed a similar error here. However, it is pertinent to note that in *Evans*, the Commonwealth Court provided alternative reasons for its decision, including (continued…)

> determined to be insufficient to establish a prima facie case on causation. … [T]hese perceived retaliatory acts amount only to [Javitz's] subjective perception that these actions resulted from her report of alleged wrongdoing and do not rise to the sort of concrete facts required to show causation under the Whistleblower Law.

*Javitz*, 2021 WL 3028160, at *6. The Commonwealth Court considered Javitz's evidence and upon finding it "nearly identical" to the evidence rejected in *Golaschevsky*, found it insufficient to establish a causal connection.

This was error. The Commonwealth Court's wholesale classification of this evidence as Javitz's "subjective perception" is wrong. The only item of evidence properly characterized as "subjective perception" evidence is her characterization of the "rude behavior of her supervisors." Evidence of pre-report performance praise[18] and the post-report relocation of her office, restriction of her participation in union meetings and contract negotiations, and changes in the delegation of responsibilities is evidence of facts, not perception, upon which an inference of post-report antagonism and causation could be based.[19] In its summary of Javitz's evidence, the Commonwealth Court neglected to include the additional evidence of post-reporting antagonism that she, as the

---

that the pre- and post-report performance evaluations were similar in that they faulted the employee's professional interaction with patients, which was ultimately the reason for her termination. *Id.* at 1070.

[18] Javitz did not establish that she received a formal positive performance evaluation prior to the report; rather, she put forth evidence that before the report, Lawton praised her as an "outstanding county employee" to the local press. *See* Javitz's Brief at 10 (citing Lawson's Deposition testimony). It appears that this is what the Commonwealth Court referred to as a positive performance evaluation.

[19] Appellees offered evidence to rebut this evidence, but because of the shifting burdens of proof, that evidence becomes relevant and is properly considered only after Javitz establishes a prima facie claim. *See* 42 Pa.C.S. § 1424(c); *O'Rourke*, 778 A.2d at 1203-04.

human resources director, was denied access to personnel files that were locked away and not given a key to access them, that she was told for the first time to do the filing for the office, that Lawson instructed the District Attorney not to pursue an investigation into the report, that Parsnik ignored all of her inquires as to what action was being taken as a result of her report, and that she was not provided a reason for her termination, even after requesting it. This is "concrete evidence" offered in support of establishing a causal connection. Javitz argues in her brief that she produced evidence of facts supporting an inference of a pattern of post-reporting antagonism culminating in her discharge,[20] and

---

[20] Javitz's argument is aligned with retaliation cases in other contexts. Javitz Brief at 50-51. As discussed in his concurring opinion in *Golaschevsky*, Justice Nigro noted the strong similarities between the evidentiary requirements of whistleblower claims and PHRA and Title VII cases. *Golaschevsky*, 720 A.2d at 760 & n.3 (Nigro, J. concurring). The same is true as to First Amendment retaliation claims as demonstrated by Javitz's federal court lawsuit and the district court's overlapping analysis of her state law whistleblower claim and her First Amendment retaliation claim. *Javitz*, 2017 WL 1287178, at *11 ("The factual allegation that provides support for the First Amendment claim provides support for the whistleblower claim and her First Amendment retaliatory claim.").

While state court case law analyzing the sufficiency of the evidence of the causal connection between post-reporting antagonistic workplace treatment and retaliatory discharge of a whistleblower is scant, cases involving the PHRA, Title VII and First Amendment retaliation claims utilize an essentially identical analytical framework to assess the sufficiency of the evidence proffered to establish the causal connection in light of the totality of the circumstances: the temporal relationship between the protected activity and the retaliatory discharge and/or a pattern of antagonism perpetrated by the employer in the period between the occurrence of the protected activity and the adverse employment consequence. *See, e.g.*, *Ferraro v. Temple Univ.*, 185 A.3d 396, 405 (Pa. Super. 2018) (explaining that plaintiff asserting a PHRA retaliation claim usually proves causation through "either (1) an unusually suggestive temporal proximity between the protected activity and the alleged retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link."); *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007) (providing that causal connection for a First Amendment retaliation claim commonly is established by unusually suggestive temporal proximity between the activity at issue and the allegedly retaliatory action or a pattern of antagonism coupled with timing); *Woodson v. Scott Paper Co.*, 109 F.3d 913, 920 (3d Cir. 1997) (explaining that to establish a prima facie cause of discriminatory retaliation under the PHRA or Title VII, a plaintiff can establish the necessary link between protected activity (continued…)

we agree that the Commonwealth Court erred in concluding that it was instead merely her perception that the conduct was antagonistic.

For this reason, we conclude that the Commonwealth Court erred and misapplied the law. Accordingly, we vacate its order and remand for further proceedings consistent with this opinion.[21]

The order of the Commonwealth Court is VACATED and the case is REMANDED for further proceedings.

Chief Justice Todd and Justices Dougherty, Wecht, Mundy and Brobson join the opinion.

The Late Chief Justice Baer did not participate in the decision of this matter.

---

and termination through temporal proximity between the two events or "a pattern of antagonism in the intervening period"); *Rosati v. Colello*, 94 F. Supp. 3d 704, 717 (E.D. Pa. 2015) (providing that to establish causation for PHRA or Title VII retaliation claim on temporal proximity alone, "[d]ays are suggestive; months are not" and that "the timing of an alleged retaliatory action must be unusually suggestive of retaliatory motive before a causal link will be inferred").

[21] The trial court granted summary judgment in Appellees' favor on the Whistleblower Law claim upon finding that Javitz failed to establish a prima facie case as to multiple aspects of her claim, not just for her failure to establish a causal connection, and Javitz challenged each of those determinations on appeal. *See Javitz*, 2021 WL 3028160, at *4-*6. In disposing of Javitz's appeal, however, the Commonwealth Court addressed only the trial court's causal connection ruling, leaving unresolved Javitz's remaining challenges including, inter alia, her challenge to the trial court's ruling that she failed to establish wrongdoing by a public body because of the county employee's role as a union representative at the time of the alleged wiretap violation. Upon remand, the Commonwealth Court should address the balance of the issues Javitz raised on appeal.